[No. 13539. Department One. January 26, 1917.]

## AMELIA ECKHART, *Respondent*, v. CHARLES PETERSON, *Appellant*.[1]

PLEADING—BILL OF PARTICULARS. Where the specific damages are set forth with exactness, a bill of particulars cannot be required, since its function is not to set forth the cause of action.

PLEADING—MATERIAL VARIANCE—DAMAGES. Where the complaint in a civil action for rape specifically sets forth the damages claimed with all the exactness of a bill of particulars, it is error to admit, over the objection of the plaintiff, evidence of other injuries received in the assault such as severe injuries to the arm and displacement of the womb not alleged in the complaint.

APPEAL—REVIEW—PLEADING—AMENDMENT TO CONFORM TO PROOF. Trial amendments to the complaint will not be considered as made where evidence extending the issues was admitted over objection, no trial amendment was requested, and it cannot be fairly said that the theory of the trial was acquiesced in by the complaining party.

SAME—REVIEW—PLEADINGS—CONTINUANCE. In such a case, it is necessary to apply for a continuance only after the amendment is made, in view of Rem. Code, § 258, requiring a plain, concise statement of the facts.

SAME—REVIEW—PLEADINGS—HARMLESS ERROR. The admission of evidence extending the issues is not prejudicial where the only possible effect of the evidence was to augment the damages and no claim was made that the verdict was excessive.

APPEAL—REVIEW—OBJECTIONS NOT RAISED—NEW TRIAL. The objection that the verdict was excessive cannot be raised for the first time on appeal.

EVIDENCE—ADMISSION—OFFER TO COMPROMISE. In a civil action for rape, evidence is admissible that, when plaintiff charged the defendant with the paternity of her child and demanded a settlement, he did not deny it, and is not subject to the objection that it touches an offer to compromise, when the defendant did not offer to settle.

RAPE—CIVIL LIABILITY—DAMAGES—ISSUES—PATERNITY OF CHILD— EVIDENCE—ADMISSIBILITY. In a civil action for rape in which damages are claimed on account of the alleged pregnancy of the plaintiff, the paternity of the child is directly in issue and evidence is admissible tending to show that the plaintiff had had criminal relations

[1]Reported in 162 Pac. 551.

with any other person than the defendant at about the time that the child must have been conceived.

SAME. In such a case, a question, on cross-examination of the plaintiff as to whether she had had intercourse with any other man must be limited as to time.

APPEAL—REVIEW—TRIAL—HARMLESS ERROR. In a civil action for rape in which the paternity of a child is in issue, it is prejudicial error for counsel to remark on the child's resemblance to the defendant, and for the court, on objection, to state that the "baby has been in evidence for the past few days;" but the error is cured where no exceptions were taken and defendant had invited it by testifying that it resembled another man, and had acquiesced in its presence in court.

RAPE — CIVIL LIABILITY — EVIDENCE — ADMISSIBILITY — EXHIBITS. Upon an issue as to the paternity of a baby, in an action for rape, the baby cannot be made an exhibit, and its resemblance to its alleged father is too indistinct and uncertain to have any probative force.

SAME—CIVIL LIABILITY—DEFENSE—INCONTINENCE. In a civil action for rape, evidence of incontinence with other men is not admissible.

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR. Error in the admission of acts of incontinence by plaintiff, suing for damages for rape, is harmless where it was offered only upon the measure of damages and there was no claim that the damages were excessive.

TRIAL—MISCONDUCT OF COURT—FAIR TRIAL. In a civil action for rape, defendant's constitutional right to a fair trial is infringed, where the court suggested the calling of the public prosecutor when one of the defendant's witnesses was testifying as to his own improper conduct with plaintiff, and it is immaterial that no exceptions were taken, since a requested instruction to disregard such comment might not have removed the effect.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered March 1, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Freece & Pettijohn, H. C. Erickson,* and *W. E. Southard,* for appellant.

*F. K. P. Baske, C. J. Lambert,* and *Martin & Jesseph,* for respondent.

ELLIS, C. J.—Action for damages for personal injuries charged as the result of an assault and forcible rape which it is alleged was inflicted by defendant upon plaintiff on April 15, 1914. The specific injuries complained of and for which damages are claimed are set out in the complaint as follows:

"(1)  .  .  .  Said defendant rudely seized the plaintiff and committed an assault upon her as follows to wit: Dragging her into the bed room, throwing her upon the bed and raping her three times in succession, holding her all of the time flat on her back upon the bed for an hour or more, twisting, straining, and wrenching her back, thereby injuring it permanently. As a result of said raping and sexual intercourse had as above stated the plaintiff became pregnant and was delivered of a child January 18, 1915, all of which said acts so done by the defendant to the plaintiff were forcibly done by said defendant, with force and against the will and without the consent of this plaintiff.

"(2)  That said defendant greatly frightened the plaintiff by entering said house seizing her and throwing her upon the bed and raping her, impregnating her, thereby causing her to have a child, all of which said acts caused her to suffer great mental pain and anguish, and did thereby damage this plaintiff in the sum of $11,000.

"(3)  That said defendant by committing the assault upon this plaintiff as in said paragraph 1 stated, namely by seizing her, throwing her upon the bed, forcing her to have sexual intercourse with him for three times, forcing her to lay [lie] flat on her back for an hour or more, by permanently injuring her back, by wrenching and twisting it to such an extent that the plaintiff has suffered severe pain in the small of her back ever since, and by reason of the defendant's said treatment the plaintiff has been unable to work and has suffered great physical pain, and by reason of the defendant's raping the plaintiff as above alleged she became pregnant and in due time had a son by the defendant, all of which said acts so done by the defendant on the plaintiff were done contrary to her consent and against her will and consent, forcibly and maliciously, thereby causing this plaintiff to suffer great physical pain and torture to her irreparable

damage in the sum of $12,000, in which sum said defendant has damaged this plaintiff."

Then follows a prayer for judgment for $23,000 and costs. The cause went to trial upon the issues so tendered.

We shall not attempt to set out, even in substance, the disgusting details of the needlessly voluminous and hopelessly conflicting evidence adduced on both sides. It must suffice to say that plaintiff testified to the effect that she was an unmarried woman, twenty-two years old; that she was employed as a domestic in defendant's home for several months in 1913, and again from February on through haying time till about the middle of July, 1914, that, during his wife's absence at about two o'clock p. m. on April 15, 1914, defendant forcibly ravished her in the manner set out in the complaint. She admitted that she prepared the evening meal for defendant, his wife and son on that day, and, notwithstanding her alleged injuries, continued in his employment until the following July, doing the usual work of a domestic on the farm, from time to time attending dances with defendant and his wife, and made no complaint to any one till shortly before she gave birth to a child on January 18, 1915. Defendant positively denied any improper conduct with plaintiff, either with force or otherwise, and testified that he accompanied his wife to the town of Krupp on the day in question and did not return to his home till late that afternoon. In this he was corroborated by his wife and several other witnesses.

The jury returned a verdict for $5,000. At appropriate times, defendant moved for a directed verdict, for judgment *non obstante veredicto*, and for a new trial. All of these were denied, and judgment was entered upon the verdict. Defendant appeals.

I. Over appellant's objection that it was outside the issues tendered by the complaint, respondent was permitted to testify to a severe injury and bruising of her arm, resulting in much pain. Over the same objection, a physician was per-

mitted to testify that he had examined respondent shortly before the trial and found a displacement of the womb, resulting in "female trouble," which would probably necessitate an operation and which he attributed to childbirth. Appellant urges that the admission of this testimony was error. Respondent retorts that appellant should have moved to make the complaint more specific or to require a bill of particulars, and in any event should have moved for continuance when he saw the latitude which the evidence would be permitted to take. The complaint did not suggest the necessity for a bill of particulars, much less require it. A motion either to make more specific or for a bill of particulars soundly must have been denied. Moreover, the function of a bill of particulars is not to set forth the *cause* of action or *ground* of defense; these are a function of the original pleading. *Dudley v. Duval*, 29 Wash. 528, 70 Pac. 68. Here the complaint itself set forth the injuries therein mentioned with all the exactness of a bill of particulars. It would be a novel doctrine to hold where, as here, are set forth definite and specific injuries for which damages are claimed without any allegation, either general or specific, of other injuries, that, unless the defendant demand further specification, he assumes the risk of having to meet, over timely objection, evidence as to injuries not specified, both direct and consequential. Under such a doctrine respondent might just as well have been permitted to introduce evidence of a broken leg, impaired sight or hernia without pleading anything of the kind. While some latitude must be allowed to a pleader in his specification of injuries complained of (*Clukey v. Seattle Electric Co.*, 27 Wash. 70, 67 Pac. 379), the injuries of which proof is admitted must be such as would be expected naturally to result from those alleged, either specifically or generally. *Horton v. Seattle*, 53 Wash. 316, 101 Pac. 1091; *Howells v. North American Transp. & Trading Co.*, 24 Wash. 689, 64 Pac. 786.

Nor was it incumbent upon appellant to move for a continuance, in the absence of an amendment to the complaint. He had the right to demand a correct ruling confining the evidence to the issues as made up, thus forcing respondent to stand on her pleading or ask leave to amend. After such amendment, and then only, should the failure to ask a continuance on the ground of surprise be construed as a waiver. Any other view would practically abrogate the necessity for framing issues by a plain and concise statement of the facts as required by statute, Rem. Code, § 258, and would make an objection to the introduction of evidence as outside the issues an idle formality. The rule that, where issues have been extended through the admission of evidence which would have warranted a trial amendment, such amendment will be considered as made, is not invokable where the evidence was admitted over objection and no trial amendment was requested. *Oldfield v. Angeles Brewing & Malting Co.*, 72 Wash. 168, 129 Pac. 1098. It is true that we have often held that, where certain matters were treated as in issue at the trial, the theory upon which the trial proceeded cannot be rejected for the first time in the appellate court. See *Haas v. Washington Water Power Co.*, 93 Wash. 291, 160 Pac. 954, and cases there cited. But that rule only applies where it may be fairly said that the trial theory was acquiesced in by the party complaining. The contrary appears in the case before us.

It does not follow, however, that the admission of the evidence complained of was prejudicial. Its only possible effect was to augment the damages. So far as the record shows, no claim of excessive verdict was made in the lower court. The motion for a new trial was based upon all of the statutory grounds save the fifth and the sixth, which alone refer to excessive recovery. We must assume that this ground was omitted from the motion advisedly. The claim that the damages are excessive cannot be raised for the first time in this court. Moreover, even in this court, though in the brief it

is asserted that the verdict is excessive, none of the assign-
ments of error are based upon that specific ground.

II.   Respondent and her mother were permitted to testify,
over objection, to a conversation had by them with appellant
in which they charged him with the paternity of the child
and demanded a settlement, at which time they stated in
substance that he refused to settle, but did not deny the
paternity of the child.   It is urged that this impinged the
rule against the admission of evidence touching an offer to
compromise.   We think not.   Appellant made no offer to
settle, nor did he seek an interview for that purpose.   Neither
of the witnesses so testified.   The record shows that the evi-
dence was offered solely for the purpose of showing that,
when charged with the paternity of the child, appellant did
not deny it.   It was clearly admissible for that purpose.
*Ewing v. Bass*, 149 Ind. 1, 48 N. E. 241; *Rose v. Rose*, 112
Cal. 341, 44 Pac. 658; 1 Rice, Evidence, p. 424.

III.   On cross-examination, respondent was asked: "Was
this the first time you ever had intercourse with a man?"   She
answered: "Yes."   Upon motion of her attorney, this was
stricken as not proper cross-examination.   This is assigned·
as error.   It is obvious that, in any view of the matter, the·
striking of this answer was not prejudicial to appellant.   But,.
since the judgment must be reversed on another ground, we
deem it expedient now to determine to what extent inquiry
as to prior specific acts of unchastity may be carried, so that
error in that respect may be avoided on another trial.   In
this state the law as to inquiry touching prior specific acts·
is reasonably well settled in criminal prosecutions for sexual
offenses.   In such criminal prosecutions, with one exception,
which we shall presently notice, it is only where a *previous
chaste character* of the· prosecuting witness is by statute
made an essential element of the offense that evidence of prior
specific acts of incontinence on her part with others than the
accused may be elicited, either on her cross-examination or

by the testimony of other witnesses. For instance, in prosecutions for seduction under Rem. Code, § 2441, which makes previous chaste character an essential, such inquiry is admissible. *State v. Jones,* 80 Wash. 588, 142 Pac. 35. It is also admissible in prosecutions for statutory rape of a female child "fifteen and under eighteen years of age, and of previously chaste character," under the third subdivision of Rem. Code, § 2436. *State v. Workman,* 66 Wash. 292, 119 Pac. 751. The ground of admission in such cases, namely, that actual physical chastity is an essential element of the crime, hence directly in issue, is fully discussed in the two decisions cited and need not be further elucidated here.

In criminal prosecutions for forcible rape, such evidence of prior acts cannot be elicited, either by cross-examination of the complaining witness or by evidence of third persons. This, for the reason that her previous chaste character is not an essential element of the crime of forcible rape, hence not directly in issue. Therefore she should not be expected to meet any number of collateral issues and explain every act of her life, nor to rebut possible false evidence of such specific acts of incontinence. She should only be required to defend her prior general reputation for chastity as bearing upon the question of consent, which is always in issue and is a very different thing from actual previous chastity. *State v. Holcomb,* 73 Wash. 652, 132 Pac. 416; *State v. Ogden,* 39 Ore. 195, 65 Pac. 449. Our attention has been called to no decision of this court, and we recall none, in which the question here involved has been passed upon in a civil action for damages for assault aggravated by forcible rape and resulting pregnancy.

We have adverted, at the risk of prolixity, to the rule as applied by this court in the two classes of criminal cases merely to mark its basis, which is to prevent a confusion of issues and unfair surprise, and to show that, even in those cases, we have refused to extend the rule of exclusion beyond its only rational basis; that is, to cases where actual previous

chaste character is essentially in issue.   In the civil action
for damages for assault aggravated by rape and pregnancy,
it is obvious not only that the issues are broader, but also
that the quantum of proof required to establish their affirma-
tive is less.   Greater latitude should therefore be given the
defense.   The issues involve not merely the fact of assault
and rape, but also the paternity of the child and consequent
damages, neither of the last two elements being in issue in
criminal cases.

Even in criminal prosecutions for forcible rape which it is
claimed resulted in pregnancy, and the woman's evident con-
dition before the birth, or the child itself afterwards, is called
to attention of the jury, evidence of dissolute habits or spe-
cific acts of unchastity at about the time when the child must
have been begotten are admissible, not as a defense, but as
tending to account for her condition and meeting the prejudice
against the accused which the fact of pregnancy of the prose-
cuting witness would probably create in the minds of the
jurors.   *State v. Mobley*, 44 Wash. 549, 87 Pac. 815; *State
v. Blackburn* (Iowa), 110 N. W. 275; *State v. Bebb*, 125
Iowa 494, 101 N. W. 189; *People v. Flaherty*, 29 N. Y.
Supp. 641.   In the case here, since damages were asked not
only for the assault and rape, but also for the resulting preg-
nancy and the physical and mental pain and suffering oc-
casioned thereby, it is plain that the paternity of the child
was directly in issue, and any evidence reasonably tending to
cast doubt upon that question should be admitted in defense.
Evidence was admissible, therefore, whether elicited by cross-
examination of the woman herself or through the testimony
of other witnesses, tending to show that she had had criminal
relations with any other person than appellant at about the
time when in the nature of things the child must have been
begotten.   *Young v. Johnson*, 123 N. Y. 226, 25 N. E. 363;
*Smith v. Yaryan*, 69 Ind. 445, 35 Am. Rep. 232; *Watry v.
Ferber*, 18 Wis. 500, 86 Am. Dec. 789; *Whitman v. State*,
34 Ind. 360; 5 Jones, Commentaries on Evidence, p. 168;

§ 835. The question put to the respondent in this case was not limited as to time, hence the answer was properly stricken.

IV. The following incident is assigned as error. On the second day of the trial, appellant had testified to certain indiscreet demeanor of respondent with one Hoch during and prior to April, 1914, and had expressed the opinion that the baby looked like Hoch. On cross-examination, respondent's counsel called attention to the child and claimed that it resembled appellant, stating, "We have the baby here . . . if he desires to show it to the jury." Appellant's counsel objected, whereupon the court said: "You want it to appear as an exhibit in the case," and after further objection on counsel's part to the effect that the introduction of the baby was not proper nor a part of the cross-examination, the court said: "I think the baby has been in evidence for the past two days. I have seen it." [Addressing the jury,] "Gentlemen, have you seen it?" The jury answered, "Yes." The court, "I thought so." All of this was, of course, error, and highly prejudicial. But it was invited by appellant when he testified to the resemblance of the child to another man, and no exeception was taken to the court's remarks. Moreover, the record shows that the baby was in the court room on the first day of the trial and had been referred to by counsel for appellant in the presence of the jury. Having submitted to, and attempted to profit by, the baby's presence, counsel cannot now take advantage of the error. In view of a possible retrial we will say, however, that it is clearly the better rule to permit no reference to a supposed resemblance of the child to any one. The child cannot be made an exhibit, and the resemblance of a baby to its father is too indistinct and uncertain to be admissible as having any probative value. *State v. Danforth*, 48 Iowa 43, 30 Am. Rep. 387; *Gray v. State*, 43 Tex. Cr. 300, 65 S. W. 375; *State v. Neel*, 23 Utah 541, 65 Pac. 494.

V. The refusal of the court to permit appellant to prove various acts of incontinence by respondent with other men,

sometimes reclining on the ground, once leaning against a fence, soon after the alleged assault, is assigned as error. Such evidence is, of course, inadmissible as bearing upon the main issue. But the context of the offer here shows that it was advanced as tending to rebut respondent's testimony that in the assault appellant had brutally and permanently injured her back. Such injury would certainly have rendered an early submission to sexual embraces in such positions, at least, highly improbable. Properly limited by instruction, the evidence was clearly admissible for the purpose for which it was offered. But here, again, we are met by the fact that the offered evidence went only to the question of damages, and there was no claim in the court below that the damages awarded are excessive. Standing alone the error was without prejudice.

VI. Finally, a claim of error is predicated upon the following incident. A witness was testifying to certain indecent liberties he had taken with respondent in the fall of 1912, about eighteen months prior to the alleged assault, resulting in an offer on her part to submit for money. In the course of the story, respondent's counsel objected to the evidence. The objection was overruled, but the court said: "You might call the prosecutor in here though—never mind, go ahead with the story." This was a most damaging comment, either upon the character of the witness or upon the credibility of his testimony. True, no exception was taken to the court's remark, and he did instruct the jury in his general charge and in a general way to disregard any remarks of court or counsel. But under the rule announced in *State v. Jackson*, 83 Wash. 514, 522, 145 Pac. 470, these things cannot be permitted to preclude an insistence by a party upon his constitutional right to have his evidence submitted to the jury without comment by the court, when, as here, we cannot say that an instruction to disregard such comment would have removed its effect. The reasons are so distinctly and forcibly put in the *Jackson* case and

in the decisions there quoted as to require no restatement here. See, also, *State v. Crotts*, 22 Wash. 245, 60 Pac. 403.

It is argued that, in any event, the things to which the witness was testifying were incompetent in that they related to a specific incident of lewdness committed by respondent long prior to the time of the alleged assault, and, therefore, could have had no bearing upon the question of the paternity of the child. It is true, as we have already pointed out, that evidence of prior specific acts, when too remote to have any bearing upon the question of paternity, are inadmissible. But notwithstanding the fact that the court was admitting the evidence erroneously, the witness was offered by the appellant as one worthy of belief. The court's comment was, therefore, as prejudicial to appellant as if the testimony of the witness had been competent. It was a reflection upon one of appellant's witnesses, whose credibility was solely for the jury, thus tending to prejudice appellant's whole defense. The sole province of the court in the premises was to pass upon the admissibility of the evidence. Having ruled it admissible, he invaded appellant's constitutional right by commenting upon the evidence in any way not reasonably necessary to a ruling on its admissibility. It would be a pernicious rule to permit an escape from one palpable error through the commission of another of a wholly different character. A fair trial does not consist in the matching of errors.

The record before us presents many errors. While we have been unable to say that any one standing alone, save that last noticed, was prejudicial, that one was clearly so.

Judgment reversed, and cause remanded for a new trial.

MORRIS, MAIN, and CHADWICK, JJ., concur.