[No. 26303. Department One. November 2, 1936.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN VISSER, *Defendant*, JACK VISSER *et al., Appellants.*[1]

*J. W. Graham*, for appellants.

*M. W. Logan* and *Oliver R. Ingersoll*, for respondent.

[1]Reported in 61 P. (2d) 1284.

STEINERT, J.—John Visser, Jack Visser, and Pete Visser, who are brothers, were charged by complaint of the state with the gross misdemeanor of unlawfully having deer, namely two fawns, in their possession during the statutory closed season. At the conclusion of the state's case, in a trial before a jury, the court granted a motion to dismiss the complaint as to John Visser. The trial proceeded as to Jack Visser and Pete Visser, with the result that both were found guilty as charged. From a judgment sentencing each to pay a fine of two hundred fifty dollars and costs, the two defendants who were convicted have appealed.

The sole contention of the appellants here is that the state failed to prove unlawful possession.

The evidence produced by the state was as follows: At about 5:30 a. m., July 16, 1935, one George Johnson, a deputy state game protector living in the Mason lake district, in Mason county, and about thirteen miles northeast of Shelton, heard several shots fired in the neighborhood. He thereupon telephoned Paul T. Hughey, state game protector residing at Shelton, and notified him of the occurrence. Mr. Hughey immediately dressed and drove out to a point near Deer creek, which is in the Mason lake district and in the neighborhood of the place where the shots had been fired. Upon his arrival, Hughey found a car parked on a side road and thereupon hid his own car on the opposite side of the main road and secreted himself in the brush near the car which he had found parked.

About thirty minutes later, defendant John Visser appeared, coming through the brush with a gun. Visser got into the parked car, started the motor, and was about to proceed out of the side road when Hughey stopped him. Examination of Visser's gun by Hughey revealed that it was loaded but had been recently fired. No venison, however, was found in Visser's possession,

nor were any traces of deer found upon his person or in his car.

Visser's home was at Lilliwaup, which is on the west side of Hood canal and about thirty or forty miles northwest of the point where Hughey had accosted him. Visser's explanation of his presence, at the time, in the particular locality was that he was hunting bees or trying to locate bee trees. He also stated that he was then intending to return home by way of Belfair, which is near the head of Hood canal, and northeast of Deer creek. Hughey then told Visser that he would ride part way with him in that direction.

During his conversation with Visser, Hughey had heard a chattering of birds and chipmunks some distance down the hill and in the vicinity of an old skid road. The noise indicated to him that other persons might be approaching from that direction. After riding with Visser about a quarter of a mile in the direction of Belfair, Hughey got out of Visser's car and, after it had disappeared from sight, ran back to his own car. He then drove down the road in the opposite direction, into an old side road. Hearing a car approaching on the main road, Hughey started to drive back out of the side road and just then saw two men dodge back into the brush about two hundred feet ahead of him. He thereupon drove a short distance down along an old railroad grade nearby and stopped his car.

Mounting a stump, in order to get a clearer view of the surroundings, Hughey saw two men lying down in an open patch of ground about forty feet ahead of him. The men had on white caps, blue shirts, and overalls. Hughey recognized them as the appellants, Jack Visser and Pete Visser. He called to the men to come forward, whereupon both of them jumped up and ran for the brush, with Hughey in pursuit. Being un-

able to apprehend the men, Hughey retraced his steps and then found two fawns lying dead within twenty feet of the place where the two men had just been seen in a recumbent position. The place where the deer were found was state land. At the same time and place, Hughey also found a cap and a shirt. Hughey put the fawns in his car and then drove up the highway a short distance, and there found an unoccupied car parked by the road. The car proved to be the one that he had previously seen parked on the side road and in which he had ridden with defendant John Visser a short way in the direction of Belfair.

In the meantime, it had been prearranged between Hughey and his deputy, George Johnson, that Johnson should be conveniently near, and that if Hughey needed any help, he would so indicate by firing several shots. Upon discovering the parked car the second time, Hughey gave the prearranged signal, and Johnson shortly thereafter appeared, driving his own car. Hughey and Johnson then drove their cars back to Johnson's home, taking Visser's car in tow.

Following these incidents, the game protector and his deputy adopted a ruse by which they hoped to apprehend John Visser, whose car they had in their possession. It was planned that Mrs. Margaret Benson, who was Johnson's sister and who resided at his home, should drive toward Shelton with the view of being hailed by Visser. The ruse proved successful. Shortly after Mrs. Benson had entered upon the main road with her car, John Visser hailed her and asked whether she was going to Shelton. He did not have a gun with him at the time. Upon being told by Mrs. Benson that she was on her way to Shelton, John Visser asked, and was accorded, a ride. Visser told Mrs. Benson that he and his brothers were together and that the game protector had taken his car; also, that one of his brothers

was down the road a way and that he wanted to pick him up.

After Mrs. Benson, accompanied by John Visser, had proceeded about a mile and a half toward Shelton, they saw a man standing by the side of the road. Visser said to Mrs. Benson: ''There is my brother now; stop and pick him up.'' At the trial, Mrs. Benson identified the appellant Jack Visser as being the man whom they had seen.

When Mrs. Benson stopped her car, the man in the road started to run back into the brush. John Visser thereupon got out of the Benson car and called, ''Come on, Jack. It's all right.'' Just then Hughey and Johnson drove up from behind and placed John Visser under arrest. Jack Visser was not apprehended at that time. He was seen, however, by Mrs. Benson later in the forenoon of the same day on a street in Shelton.

After John Visser had been taken to jail in Shelton, the game protector, together with a deputy sheriff, about noon of the same day, drove to the Mason lake district, with a view of apprehending the appellants, Jack Visser and Pete Visser. While making the return trip, and when within about two miles from Shelton, they were hailed by Pete Visser, who was seeking a ride into town. Hughey recognized him as being one of the two men whom he had seen lying down near the place where the two fawns had been found earlier in the morning. At the time of hailing the officers, Pete Visser was bareheaded, and on his shirt were blood and deer hair. The officers stopped, and Hughey, after getting out of the car, reached for Visser, at the same time telling him to get into the car. Visser pulled back and started to run away. After commanding him several times to halt, Hughey shot Visser in the leg and then took him into custody.

The officers took Pete Visser to the hospital in Shel-

ton to have his wound attended. Hughey told the party in whose charge Visser was placed to take and keep the shirt that Visser was then wearing. After Hughey had left, Pete Visser broke and ran away from the hospital. He was arrested the following day in Shelton. Jack Visser was also arrested the following day at his home in Lilliwaup.

It further appears that John Visser had secreted his gun in the woods just before asking Mrs. Benson for a ride. The day after his arrest, he went with the officers and showed them where he had hidden it. The gun was found in the place designated by him.

None of the defendants testified at the trial, and the only evidence offered in behalf of any of them was testimony supporting an alibi for Jack Visser. The court gave the usual instructions touching circumstantial evidence and reasonable doubt. The court also gave an instruction on the subject of possession, both actual and constructive. No exceptions were taken to any of the instructions either as to their contents or as to their applicability.

We are satisfied that the evidence submitted by the state, if believed by the jury, as it apparently was, warranted the jury in finding that appellants had been in actual possession of the deer on July 16, 1935, and that such possession had been unlawfully acquired, contrary to the statute in such cases made and provided.

Appellants' contention is that, inasmuch as the game protector did not see them actually handling the deer or did not see them any closer than twenty feet to the deer, possession was not shown. But the crime of unlawful possession of deer is not dependent upon its observation by an officer or another third party. It is a crime, whether observed or not. Whether appellants had been in actual possession of the deer immediately

or shortly before they were seen by the game protector was a fact to be established by the evidence. The circumstances narrated were such, we think; as would lead irresistibly to the conclusion that appellants were in unlawful possession.

Appellants contend, further, that the facts did not justify any instruction upon constructive possession. But, as already stated, no exceptions were taken to the instructions, either as to their substance or as to their applicability. In the absence of any exception, errors assigned upon instructions will not be considered. Moreover, Rule of Practice VI, Rem. Rev. Stat., § 308-6 [P. C. § 8676-9], requires that exceptions shall be sufficiently specific to apprise the trial judge of the points of law or questions of fact in dispute. *State v. Eckert,* 173 Wash. 93, 21 P. (2d) 1035.

This rule has reference to the applicability of instructions as well as to their substance. No exception having been taken to the instruction, we will not inquire into its applicability.

The judgment is affirmed.

MILLARD, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.