[No. 26825. Department One. January 11, 1938.]

THE STATE OF WASHINGTON, *Respondent*, v. E. R. LINDSEY *et al., Appellants.*[1]

*E. R. Lindsey,* for appellants.

*Ralph E. Foley, C. C. Quackenbush,* and *Leslie M. Carroll,* for respondent.

[1]Reported in 74 P. (2d) 1021.

GERAGHTY, J.—By the verdict of a jury, the appellants were found guilty of the crime of first degree forgery. After motions for new trial and arrest of judgment had been overruled, judgment was entered sentencing the appellants to terms in the state penitentiary. The sentences imposed were to run concurrently with sentences imposed in another criminal action. The conviction of the appellants in the latter case was sustained in *State v. Lindsey*, 192 Wash. 356, 73 P. (2d) 738.

In the appellants' brief in that case, as in this, it is suggested that the two cases, for the saving of time, be argued and considered together, as many of the assignments of error are the same in both. This is true, and, where any of the assignments raised in the present case are controlled by our decision in the other, they will be disposed of by reference to it.

The information filed under Rem. Rev. Stat., § 2587 [P. C. § 8863], charges as follows:

"That the said defendants, E. R. Lindsey and Elbert B. Lindsey, in the County of Spokane, State of Washington, on or about the 16th day of April, 1935, then and there being, did then and there wilfully, knowingly, falsely, fraudulently and feloniously utter and put off as true to Dr. C. W. Countryman a certain false and forged writing, to-wit: the signature of L. M. Davenport on an instrument in writing commonly known as a draft in words and figures as follows:

"$50.00          Spokane, Wash., April 16, 1935. 19......
  "Twenty days after date————Pay to the
  order of Dr. C. W. Countryman————Fifty,
  and 00—100————Dollars
"Value received and charge the same to account of
"Accepted:
"To L. M. Davenport.          Elbert B. Lindsey.
  "No.................................

and that the said defendants, E. R. Lindsey and Elbert B. Lindsey then and there being, did then and there well know the said instrument in writing to be

false and forged, and the same was then and there uttered and published by the said E. R. Lindsey and Elbert B. Lindsey with the intent then and there to injure and defraud the said Dr. C. W. Countryman."

The state's evidence tends to prove that the appellants attempted to obtain fifty dollars from Dr. C. W. Countryman upon a draft for that sum drawn, in his favor, by appellant Elbert B. Lindsey, and purporting on its face to have been accepted in writing by L. M. Davenport, proprietor of the Davenport hotel, in Spokane. Appellants, E. R. Lindsey, father, and Elbert B. Lindsey, son, called upon Dr. Countryman. Elbert told him that he had made a trip into the country and had shipped some sheep for Mr. Davenport, out of the proceeds of which he was to receive ten per cent; that this sum was coming from some place in the east, to which the sheep were shipped. Dr. Countryman said that he knew nothing about drafts and did not care to accept it. The father told the doctor that, if he cared to cash the draft and accommodate him for that period of time—the draft being payable twenty days after its date, April 16th—he need not worry about Mr. Davenport's acceptance of the draft. They identified the L. M. Davenport whose acceptance was endorsed on the draft as the owner or manager of the Davenport hotel. The money sought was to be paid to both appellants.

Having heard that some spurious commercial paper, purported to have been signed by Mr. Davenport, was in circulation, Mr. McCluskey, the manager of the Davenport hotel, reported the matter to the police. The investigation of the police led to the arrest of the appellants. After arrest, they were searched by the police and the draft here in question was found, with some other drafts, upon the person of appellant E. R. Lindsey, in the Spokane hotel, and held as evidence.

The first assignment urged by the appellants for reversal is the reception in evidence of the draft, identified as state's exhibit "No. 1," as well as other papers taken from appellant E. R. Lindsey at the time of the arrest. Prior to the trial, the appellants interposed a motion to suppress, which was denied. The instrument involved in the case of *State v. Lindsey, supra,* was taken from the appellants at the same time and under the same circumstances, and what we said in disposing of the appellants' contention in that case is controlling here.

The second error assigned is based upon the court's failure to sustain the demurrer to the information upon the ground that it charged no crime. In support of this contention, appellants cite numerous cases on the subject of negotiable instruments not applicable here. The information is based on Rem. Rev. Stat., § 2587, providing that:

"Every person who, knowing the same to be forged or altered, and with intent to defraud, shall utter, offer, dispose of or put off as true, or have in his possession with intent so to utter, offer, dispose of or put off any forged writing, instrument or other thing, the false making, forging or altering of which is punishable as forgery, shall be guilty of forgery in the same degree as if he had forged the same."

Rem. Rev. Stat., § 2583 [P. C. § 8859], defining first degree forgery, is, in part, as follows:

"Every person who, with intent to defraud, shall forge any writing or instrument by which any claim, privilege, right, obligation or authority, or any right or title to property, real or personal, is or purports to be, or upon the happening of some future event may be, evidenced, created, acknowledged, transferred, increased, diminished, encumbered, defeated, discharged or affected, or any request for the payment of money or delivery of property or any assurance of money or

property, . . . shall be guilty of forgery in the first degree, . . ."

In Rem. Rev. Stat., § 2590 [P. C. § 8866], it is provided:

"Within the provisions of this subdivision relating to forgery, a 'written instrument,' or a 'writing,' shall include . . . any signature or writing purporting to be a signature of or intended to bind an individual, partnership, corporation or association or an officer thereof."

The appellants were charged with uttering an instrument known by them to bear the forged acceptance of Mr. Davenport, with the intent to defraud.

The appellants' third assignment is based upon the court's refusal to give their requested instruction No. 7 and the giving in lieu thereof its instruction No. 3. No exception was taken to the court's instruction No. 3, and the exception taken to the court's refusal to give appellants' instruction No. 7 is general in its terms, merely stating that the requested instruction is a correct statement of the law as to the drawing of negotiable instruments. The court is not required to give instructions on every abstract question of law suggested by the defendant, especially where the instructions, as a whole, as in this case, adequately present the issues to the jury.

In the court's instruction No. 5, the jury was told that the state was required to prove beyond a reasonable doubt that the instrument described in the information as having been uttered and put off by the appellants as true was, in fact, a false and forged instrument; and, second, that, on the day named, the appellants,

" . . . well knowing the same to have been forged and with intent to defraud, uttered, offered, disposed of and put off as true to one Dr. C. W. Countryman

that certain instrument and writing described in the information."

The instruction requested would have tended to mislead the jury, because the appellants were not accused of having uttered a draft addressed to Mr. Davenport as payee, but of having issued a draft with a forged acceptance by him.

The fourth assignment is based upon the court's refusal to give the appellants' requested instructions Nos. 5 and 6. The exceptions to the refusal to give these requested instructions were that they were correct presentations of the negotiable instrument law and what must be done in drawing such an instrument. As we have before said, the jury was otherwise adequately instructed on the facts necessary to constitute a violation of the forgery statute.

The fifth assignment is based upon the court's refusal to sustain the appellants' plea of former jeopardy. Their contention is based upon the allegation that, on a former trial, where they were charged with larceny by trick and device, one of the counts was based upon the attempt, by the use of the draft here in question, to obtain money from Dr. Countryman; that, after the jury had returned a verdict of guilty as to the second count in the information, as well as to the first, the court, on a motion in arrest of judgment, set the verdict aside on the second count.

At the beginning of the trial and before the jury was empaneled, the appellants attempted to raise the question of former jeopardy, but the matter was deferred upon the suggestion of the court that it could not be heard then merely on some offhand statement of counsel, but if facts later developed showing the situation to be "res judicata," the matter could then be appropriately heard. At the close of their case, the appellants renewed their motion for dismissal on the

ground of former jeopardy. The motion was again denied. The appellant E. R. Lindsey, who conducted the case throughout on behalf of himself and son, stated to the court that he wished to make an offer of proof of the record in the former case in support of his plea of jeopardy.

"THE COURT: Oh, I think that is purely a question of law and not for the jury. That is the reason I ruled the way I did. MR. LINDSEY: The only thing I had in mind is to have it appear in the record. THE COURT: Oh, I think you have made that, anyway. MR. LINDSEY: That was simply to cover that point, it wasn't for the purpose of getting any other information to the jury. THE COURT: I think that is sufficient."

The record is left in this indefinite state. No part of the file in the other case is identified or shown in the statement of facts, although the appellants have interpolated into their abstract a copy of their plea on file in the clerk's office, with attached copies of extracts from the file in the other case. These copies, of course, are not in anyway verified or identified by reference to the statement of facts.

It appears that the trial court, in rejecting the plea of former jeopardy, did so upon what we conceive to be a correct view of the law, that the other trial, being one under the larceny statute, would not bar another prosecution under the forgery statute. *State v. Elliott*, 69 Wash. 62, 124 Pac. 212; *State v. Peck*, 146 Wash. 101, 261 Pac. 779; *State v. Kingsbury*, 147 Wash. 426, 266 Pac. 174. In the last cited case, it is said:

"It will be admitted that there was no evidence offered in support of one charge that was not offered in support of the other, but this is not sufficient to make the offenses identical. To be such, they must be not only identical in fact but also in law."

Assignment six is based upon the court's refusal to strike from the record the respondent's exhibit "No.

1," the draft on which the case was founded, and in the court's denial of the appellants' motion for dismissal at the close of the evidence. This assignment is without merit.

Appellants' seventh assignment challenges the jurisdiction of the court to issue process against the appellants on the dates alleged in the information, and is similar to the fifth assignment disposed of adversely to appellants' contention in *State v. Lindsey, supra.*

That case also disposes of assignment eight, based upon the refusal of the court to grant a new trial for the reason that there had been distributed to the entire panel of jurors a pamphlet, prepared by one of the judges, entitled "Primary Instructions to Jurors"; and assignment nine, that the court erred in pronouncing the sentences of imprisonment against appellants, of date of July 10, 1937.

The tenth and final assignment is based on the language of the court's instruction No. 5, to which reference has already been made. The record discloses that no exception to this instruction was taken at the trial.

As the record discloses no prejudicial error, the judgment will be affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.