[No. 36999.   En Banc.   April 7, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. VERNON JAMES LOUIE, *Appellant.*[*]

*Reported in 413 P.2d 7.

*Ronald L. Hendry* and *Elvin J. Vandeberg,* for appellant (Appointed counsel for appeal).

*John G. McCutcheon* and *Edwin J. Wheeler,* for respondent.

HAMILTON, J.—The defendant (appellant) was charged, tried and convicted of the crime of second-degree burglary. He appeals. We affirm the conviction.

On August 5, 1962, at approximately 3 a.m., Officer George E. Babcock of the Tacoma Police Department was driving home when he saw a new tire roll across the street in front of his automobile. It appeared to come from Roy's Enco Service Station located in South Tacoma. He promptly stopped to investigate, whereupon he observed a ladder against the rear of the service-station building and defendant standing in front of the lubrication room. He approached the defendant, inquired as to his identity, and after engaging in a brief conversation placed him under arrest. He directed the defendant to accompany him across the street to a telephone booth for the purpose of calling for assistance. While the officer was dialing the telephone, the defendant struck him and attempted to get his revolver. In the struggle, the defendant was shot in the leg. The defendant was taken by ambulance to St. Joseph's Hospital in Tacoma, and a few days later was transferred to Mountain View Hospital, where he remained for approximately 2 months prior to his return to the city jail on or about October 4, 1962. Officer William W. Luebke of the Tacoma Police Department, who arrived at the scene after defendant was shot and while he was being placed in the ambulance, investigated the service-station premises with Officer Babcock. Officer Luebke testified, in substance, as follows:

A pane in the window in the lubrication room had been broken, and glass was on the floor of the station. The window frame was bent in such a way as to permit a grown man to crawl through. Two new tires in paper wrappings, including the one which Officer Babcock had observed rolling in front of his automobile, were outside the station. One appeared to be bloodstained. Inside the station all was in disarray; coin operated machines had been broken into; and trails of blood appeared, inside and outside the station. There were trails of solvent in the service station which had a distinctive odor. This odor was later detected upon defendant's shoes at the hospital.

Officer Babcock testified that defendant's hand was crudely bandaged and had been dripping blood when he was apprehended. He otherwise substantiated Officer

Luebke's observations. The station attendant testified that the station was cleaned and locked the evening before defendant's arrest, that the windows were intact, and that the next morning the station was disarranged and the two new tires were missing. Photographs of the station and its contents were introduced into evidence.

The defendant testified that he had spilled some solvent on his pants and right shoe on Friday, August 3, while working in an automotive body shop where he was employed. He further testified that when he got off work that afternoon he began a "drinking spree." He stated that Saturday afternoon, about 13 hours before he was arrested, he met two women he had known in his home town of Wapato and took them with him to the Friendly Tavern, where he stayed for about 8 hours. Defendant further testified that after he left the Friendly Tavern, sometime between 10 and 10:30 p.m., his hand was cut during a fight and bled through a loose bandage. He said that after the fight he entered the Milwaukee Tavern and could remember nothing from that time until he struck Officer Babcock at approximately 3:30 a.m. He did not know whether the two women had left the Friendly Tavern with him or had accompanied him at any time thereafter.

The defendant, on appeal, first contends that the trial court erred in denying a timely motion to dismiss the charges. By this motion, defendant alleged that he had been denied due process through refusal to grant him the assistance of counsel during the 2-month period he was under treatment in the hospitals as a result of the gun shot wound.

The testimony of defendant upon this issue shows that he requested an attorney (no one by name) while at St. Joseph's Hospital and was told by attendants that he was under arrest and could not see an attorney; that after he had been transferred to Mountain View Hospital police officers asked him to sign a statement concerning the alleged burglary which he refused to do. At this time, he stated he again requested that he be allowed to see an

attorney and was again told that he was under arrest and could not see an attorney. One month after his arrest, a social worker telephoned either the county or city jail at defendant's request and stated that he desired to speak with a specific attorney, whose name he had selected from a telephone directory. The record does not show what was done in response to this call. In any event, no attorney came to see defendant.

After defendant's return to the city jail on October 4, 1962, he was permitted to see and retain an attorney. Bail was set on October 5, 1962. Defendant appeared before the court on October 17, 1962, and, at his request, counsel was appointed to represent him. On October 26, 1962, defendant was arraigned and pleaded not guilty. Through the efforts of court-appointed counsel bail was reduced from $2,500 to $1,000, which was posted by friends of defendant on January 31, 1963. Trial commenced on February 5, 1963.

Allegations in the record that defendant had requested and had been denied assistance of counsel during his stay in the respective hospitals are uncontroverted. Refusal of such requests, whether they were for appointed or retained counsel, however, would not ipso facto constitute an infringement upon rights guaranteed by the tenth amendment to our state constitution or by the sixth amendment to the federal constitution, made obligatory upon the states by the fourteenth amendment to the federal constitution in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 Sup. Ct. 792 (1963). *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964).

To violate these constitutional provisions, the refusal must have occurred at a "critical stage" in the pretrial proceedings. *Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114, 82 Sup. Ct. 157 (1961); *White v. Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193, 83 Sup. Ct. 1050 (1963); *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 Sup. Ct. 1199 (1964); *Escobedo v. Illinois, supra; In re Pettit v. Rhay,* 62 Wn.2d 515, 383 P.2d 889 (1963); *State v. Jackson,* 66 Wn.2d 24, 400 P.2d 774 (1965). And, it must appear

that the refusal resulted in some reasonably discernible prejudice to the effectiveness of legal assistance ultimately furnished the accused. *DeToro v. Pepersack,* 332 F.2d 341 (4th Cir. 1964). In short, the courts must look to substance rather than labels in ascertaining whether constitutional rights to the assistance of counsel have been violated. *State v. Jackson, supra.*

In the instant case, no confessions, admissions, or incriminating statements were elicited from defendant during the period of his hospitalization. The defendant contends, however, as disclosed to the trial court at a pretrial hearing, that refusal of his requests for counsel denied him the opportunity to effectively prepare his defense at a time when certain witnesses were available.

The only witnesses designated by defendant were the two women, whom he testified accompanied him to the Friendly Tavern the evening before the alleged burglary. In this respect, it appears to be defendant's contention that he was so intoxicated on the night of August 5 that he had no recollection of what happened from the time he entered the Milwaukee Tavern until the altercation with Officer Babock; that he was therefore incapable of forming the intent to commit burglary, an element essential to constitute the commission of the crime; that the women were migratory workers and would be in the area but a short time; that he knew them only by their first names and did not, at the time of trial, know their residence or employment; and, had counsel been available to him immediately *after* his hospitalization, the women might have been found. The defendant did not, however, purport to know whether their testimony would be favorable or unfavorable to him.

Under the foregoing, it is purely speculative (1) as to whether these potential witnesses could have been located by defendant's counsel, during the period of defendant's hospitalization had such counsel been available, and (2) as to whether their testimony would have assisted in his defense. Upon these facts and circumstances, we cannot say that refusal of the requests for counsel during defend-

ant's hospitalization so prejudiced the effectiveness of the legal assistance accorded to him from and after October 5, 1962, as to compel or justify dismissal of the charge.

■ The defendant further argues that the denial of counsel was in violation of RCW 9.33.020(5). This statute makes it a misdemeanor for a police officer or other person having custody and control of a person under arrest to deny that person's request to communicate with an attorney. It adds nothing to the rights of the defendant which we have not heretofore considered.

We hold, therefore, that the trial court did not err in denying defendant's motion to dismiss.

The defendant next assigns error to the trial court's refusal to grant his motion for an arrest of judgment. The defendant contends that the evidence is purely circumstantial and insufficient to support a verdict against him of burglary in the second degree.

We disagree. The evidence we have heretofore detailed substantially supports the jury's verdict. Furthermore, the evidence and the reasonable inferences therefrom are consistent with the defendant's guilt and inconsistent with any reasonable theory of innocence. *State v. Mickens*, 61 Wn.2d 83, 377 P.2d 240 (1962).

Defendant next assigns error to the giving of instruction No. 13, which reads:

If you find from the evidence beyond a reasonable doubt all of the following alleged facts, to-wit:

1. That the defendant, VERNON JAMES LOUIE, did break and enter a building known as Roy's Enco Service, 2901 So. 38th Street, with intent to commit some crime therein, and

2. That such act was committed on or about the 5th day of August, 1962, in the County of Pierce, State of Washington;

Then you must find the defendant, VERNON JAMES LOUIE, guilty of Burglary in the Second Degree charged in the information.

If the State, however, fails to prove each and all of the foregoing elements, it will be your duty to return a verdict of not guilty.

RCW 9.19.020 defines burglary in the second degree as follows:

Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

It is defendant's contention that instruction No. 13 is erroneous because it omits an essential ingredient of the statutory offense of burglary in the second degree when it fails to qualify the allegation "a building known as Roy's Enco Service, 2901 So. 38th Street," by the phrase "wherein property is kept for use, sale or deposit." This omission, defendant argues, (a) relieved the state of proving and the jury of finding one of the statutory elements of the crime charged; (b) constituted a judicial comment on the evidence in violation of Const. art 4, § 16, and (c) amounted to a denial of due process of law.

We find no prejudicial or reversible error flowing from instruction No. 13 for several reasons.

First, defendant did not at the time of trial either object to the instruction in the form given or propose any alternative instruction.

Rule of Pleading, Practice and Procedure 51.16W, RCW vol. 0, requires that exceptions to jury instructions given or refused shall be taken prior to the reading of the instructions to the jury. This rule is applicable in criminal cases. *State v. Severns,* 13 Wn.2d 542, 125 P.2d 659 (1942); *State v. Mickens, supra*; Rule of Pleading, Practice and Procedure 101.04W, RCW vol. 0. The reason for the rule is succinctly pointed out in *State v. Severns, supra,* at 562, where we stated:

The importance of these rules of practice, which we have held to be mandatory and not directory, is apparent. Their purpose is to give to the trial court the benefit of

the study and research of counsel, and to advise the trial court of the contentions of the respective parties as to the law or the facts, at a time when the court can, if it so desire, correct any error which it may feel it has made in its instructions.

█ We have, with almost monotonous continuity, recognized this procedural requirement and adhered to the proposition that, absent obvious and manifest injustice, we will not review assignments of error based upon the giving or refusal of instructions to which no timely exceptions were taken.[1] We are satisfied that the requirements of this procedural rule are constitutional, and we do not conceive that requiring reasonable adherence to the rule violates due process concepts, especially where it does not appear that an accused is thereby deprived of a fair trial. *Cf. Rhay v. Browder*, 342 F.2d 345 (9th Cir. 1965).

█ Second, the defendant did not stand mute at the

---

[1] *State v. Williams*, 13 Wash. 335, 43 Pac. 15 (1895); *State v. Anderson*, 20 Wash. 193, 55 Pac. 39 (1898); *State v. Mitchell*, 32 Wash. 64, 72 Pac. 707 (1903); *State v. Fillpot*, 51 Wash. 223, 98 Pac. 659 (1908); *State v. Lewis*, 65 Wash. 485, 118 Pac. 626 (1911); *State v. Andrews*, 71 Wash. 181, 127 Pac. 1102 (1912); *State v. McBride*, 72 Wash. 390, 130 Pac. 486 (1913); *State v. MacLeod*, 78 Wash. 175, 138 Pac. 648 (1914); *State v. Smith*, 95 Wash. 271, 163 Pac. 759 (1917); *State v. Rudolph*, 127 Wash. 262, 220 Pac. 815 (1923); *State v. Brady*, 138 Wash. 421, 244 Pac. 675 (1926); *State v. Polos*, 140 Wash. 399, 249 Pac. 488 (1926); *State v. Sholund*, 153 Wash. 398, 279 Pac. 591 (1929); *State v. Vennir*, 159 Wash. 58, 291 Pac. 1098 (1930); *State v. Shafer*, 161 Wash. 664, 297 Pac. 176 (1931); *State v. Hanson*, 167 Wash. 111, 8 P.2d 1003 (1932); *State v. Visser*, 188 Wash. 179, 61 P.2d 1284 (1936); *State v. Lindsey*, 193 Wash. 241, 74 P.2d 1021, cert. den. 304 U.S. 559, 82 L. Ed. 1526, 58 Sup. Ct. 947 (1938); *State v. Thomas*, 8 Wn.2d 573, 113 P.2d 73 (1941); *State v. Severns*, 13 Wn.2d 542, 125 P.2d 659 (1942); *State v. Ramser*, 17 Wn.2d 581, 136 P.2d 1013 (1943); *State v. Bauers*, 23 Wn.2d 462, 161 P.2d 139 (1945); *State v. Stevick*, 23 Wn.2d 420, 161 P.2d 181 (1945); *State v. Payne*, 25 Wn.2d 407, 171 P.2d 227 (1946); *State v. Hogan*, 29 Wn.2d 407, 187 P.2d 612 (1947); *State v. Norman*, 39 Wn.2d 575, 237 P.2d 194 (1951); *State v. Collins*, 50 Wn.2d 740, 314 P.2d 660 (1957); *State v. Hinckley*, 52 Wn.2d 415, 325 P.2d 889 (1958); *State v. Johnson*, 55 Wn.2d 594, 349 P.2d 227 (1960); *State v. Mickens*, 61 Wn.2d 83, 377 P.2d 240 (1962); *State v. Moore*, 61 Wn.2d 165, 377 P.2d 456 (1963); *State v. Harris*, 62 Wn.2d 858, 385 P.2d 18 (1963); *State v. Vindhurst*, 63 Wn.2d 607, 388 P.2d 552 (1964); *State v. Goldstein*, 65 Wn.2d 901, 400 P.2d 368 (1965).

time of trial and rely solely upon his plea of not guilty and the burden thereby cast upon the state. He took the stand and testified. In his testimony, he did not deny his presence at the situs of the service station. The gist of his testimony was that alcohol obscured his memory of events immediately preceding his struggle with the arresting officer. Although he had been at liberty for a period of time before trial and had the benefit of the investigative services of counsel for a number of months, he did not, by his testimony or otherwise, challenge, question, or dispute the state's evidence that Roy's Enco Service was, at all times concerned, a building where property was kept for use, sale or deposit. Neither does he question this fact on appeal, nor could he, for the evidence adduced at trial, embracing as it does the testimony of the service station attendant, photographs of the station interior, and the paper wrapped tire, establishes the content of the building beyond controversy. Thus, this facet of the charge, by the posture of the evidence presented at the trial, became no more than an unquestioned, undisputed, and uncontroverted peripheral issue. The vital and contested issues, of whether defendant was capable of entertaining a felonious intent and broke and entered the station, were properly submitted to the jury.

In the light of the foregoing circumstances, it cannot be effectively argued that the state ignored or sought to relieve itself of the burden of establishing the character of the building involved in the alleged crime. Neither can it be convincingly asserted that the omission in instruction No. 13 prejudicially relieved the state of its burden and/or prejudicially deprived defendant of the benefit of having the jury pass upon a significant, crucial, and disputed issue. Prejudice to the defendant is imperceptible, if not invisible.

Third, omitting reference in instruction No. 13 to the undisputed peripheral issue involved simply did not amount to an unconstitutional judicial comment on the evidence.

To fall within the ban of Const. art 4, § 16, the jury in a given case must be able to infer from the actions or

expressions of the trial judge that he personally believes or disbelieves the evidence relative to a disputed issue. *State v. Browder,* 61 Wn.2d 300, 378 P.2d 295 (1963), and cases cited. Usually, the prohibited inference takes form and arises from an overt, rather than a passive, act or expression on the part of the trial judge. Though it is possible that a failure on the part of a trial judge to act or speak may on occasion give rise to some unfortunate inference, it is necessary, to bring such an inference within the constitutional ban, that the omission be surrounded by such circumstances as will fairly import to the jury an expression of judicial opinion relative to the credibility of some significant evidence. We cannot say, in the instant case, the challenged omission in instruction No. 13 falls into this category.

Furthermore, we have held that adverting to or assumption of an admitted or undisputed peripheral fact does not constitute constitutionally inhibited comment. *State v. Wingard,* 92 Wash. 219, 158 Pac. 725 (1916); *Case v. Peterson,* 17 Wn.2d 523, 136 P.2d 192 (1943); *James v. Ellis,* 44 Wn.2d 599, 269 P.2d 573 (1954); *State v. Browder, supra.*

Fourth, the cases relied upon by defendant to elevate his challenge to instruction No. 13 into the constitutional realm and thereby relieve him of the obligation of excepting to the instruction in the trial court, as required by Rule of Pleading, Practice and Procedure 51.16W, *supra,* are clearly distinguishable. *State v. Crotts,* 22 Wash. 245, 60 Pac. 403 (1900) and *State v. Warwick,* 105 Wash. 634, 178 Pac. 977 (1919) each involve a clear and direct judicial comment on conflicting evidence. *State v. Marsh,* 126 Wash. 142, 217 Pac. 705 (1923), relates to the denial of a public trial as guaranteed by Const. art 1, § 22 (amendment 10). And in *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953), the defendant took appropriate and timely exception to the instruction which omitted an element about which an evidentiary conflict existed. To extend the principle for which these cases stand to the situation here pre-

sented would exalt form over substance and virtually abolish the requirement that a party timely except to an instruction he believes to be erroneous.

Finally, our review of the statement of facts and the instructions of the trial court convinces us that the defendant received a full and fundamentally fair trial. He was ably represented by competent counsel. All vital and significant issues raised by his plea of not guilty and the evidence presented were submitted to and passed upon by the jury. While we cannot applaud the draftsmanship of instruction No. 13 or the challenged omission, we are unwilling in the context of this case to characterize it as a violation of due process.

■ Defendant further assigns error to the fact that he was transferred from the Pierce County jail to the reformatory following imposition of sentence and before the filing of his notice of appeal. He was belatedly returned to the county jail, and is presently free on bail pending disposition of his appeal. His complaint is that his detention in the reformatory, following his notice of appeal, deprives him of the credit he would have received under RCW 9.95.062[2] for like time served in the county jail. This claim, however, does not constitute grounds for a new trial or for a dismissal of his conviction. At best it calls only for an order of the superior court authorizing the Board of Prison Terms and Paroles to allow appropriate credit for the time defendant spent in custody following his notice of appeal. *Lindsey v. Superior Court,* 33 Wn.2d 94, 204 P.2d 482 (1949). Upon going down of the remittitur in this case, the superior court may enter such an order.

---

[2]"An appeal by a defendant in a criminal action shall stay the execution of the judgment of conviction.

"In case the defendant has been convicted of a felony, and has been unable to furnish the bail bond required by RCW 10.73.040 pending the appeal, the time during which he remains in the jail of the county from which the appeal is taken shall be deducted from the term for which he was theretofore sentenced to the penitentiary, if the judgment against him be affirmed."

The judgment is affirmed.

Hill, Donworth, Finley, Weaver, and Ott, JJ., and Langenbach, J. Pro Tem., concur.

Hunter, J. (dissenting)—I dissent. The key instruction to the jury, No. 13, defining the crime with which the defendant was charged, omitted one of the essential elements of the crime of burglary in the second degree. RCW 9.19-.020 provides:

> Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure *wherein any property is kept for use, sale or deposit,* shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years. (Italics mine.)

Instruction No. 13 did not include the element requiring that the breaking and entering into a building, room or structure must be "wherein any property is kept for use, sale or deposit." The instruction was prefaced with the statement:

> If you find from the evidence beyond a reasonable doubt all of the following alleged facts, . . . .

It then listed all the elements of the crime of burglary in the second degree as provided in RCW 9.19.020, *supra*, with the exception of the above element of the crime. The instruction then stated:

> Then you must find the defendant, Vernon James Louie, guilty of Burglary in the Second Degree as charged in the information.

The instruction was equivalent to directing the jury that it was not necessary for the state to prove an essential element of the crime of burglary in the second degree to find the defendant guilty of such a crime.

In *State v. Emmanuel,* 42 Wn.2d 799, 820, 259 P.2d 845

(1953), quoting from *Croft v. State,* 117 Fla. 832, 158 So. 454, we said:

> "Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged and a charge attempting to define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. *It is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition by the court.*" (Italics mine.)

Also, see *State v. Hilsinger,* 167 Wash. 427, 9 P.2d 357 (1932); *See v. Willett,* 61 Wn.2d 681, 379 P.2d 915 (1963); *Sage v. Northern Pac. Ry.,* 62 Wn.2d 6, 380 P.2d 856 (1963).

The elimination of the above-stated element of the crime in instruction No. 13, *supra,* being equivalent to a directed verdict, amounted to a comment on the evidence by the court in violation of art. 4, § 16, of our state constitution and constituted reversible error.

Moreover, the defendant was denied the right to a trial by jury in violation of art. 1, § 22, of our state constitution, in that the defendant was denied the right to have all the elements of the crime with which he was charged tried by the jury rather than a disposition of one of the elements by the trial judge under instruction No. 13, *supra.* This also constituted reversible error.

The majority opinion states that no exception was taken to instruction No. 13 at the trial, as required by Rule of Pleading, Practice and Procedure 51.16W, RCW vol. 0, to permit this court to review an assignment of error to the instruction.

The rule is clear in this state that this court will consider an assignment of error, irrespective of exceptions taken to the ruling of the trial court, where a constitutional right of an accused is invaded. We expressly so stated in *State v. Warwick,* 105 Wash. 634, 637, 178 Pac. 977 (1919):

> The instructions were a comment on the evidence within the constitutional provision above referred to,

and were not justified by the testimony of the appellant. The respondent claims that the error in the instructions is not now open to the appellant because no exceptions were taken thereto which were called to the attention of the trial court, relying upon the general rule in such cases. *Where, however, the instructions invade a constitutional right of the accused, it is not necessary, in order to have such error reviewed, that an exception be taken and called to the attention of the trial court. State v. Crotts,* 22 Wash. 245, 60 Pac. 403; *State v. Jackson,* 83 Wash. 514, 145 Pac. 470; *Eckhart v. Peterson,* 94 Wash. 379, 162 Pac. 551. (Italics mine.)

Also, see *State v. Marsh,* 126 Wash. 142, 217 Pac. 705 (1923).

The remaining statements of the majority in justification of the jury verdict disclose no waiver by the defendant of the invasion of his constitutional rights, and I find none in the record.

The defendant should be granted a new trial.

ROSELLINI, C. J., concurs with HUNTER, J.

*Reported in 413 P.2d 352.