[No. 27212. Department One. December 22, 1938.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRY SMITH, *Appellant.*[1]

[1]Reported in 85 P. (2d) 651.

*A. P. Wilson,* for appellant.

*Paul O. Manley* and *Stanley J. Krause,* for respondent.

ROBINSON, J.—By a criminal complaint filed in the justice court, appellant was charged with the offense of having unlawfully had in his possession one deer, not a buck deer with visible horns, killed, caught, or taken in the manner provided by law. The justice court adjudged him guilty and imposed a fine of one thousand dollars. From that judgment, he appealed to the superior court, where, upon trial *de novo,* he was again found guilty and sentenced to one year in the

county jail. From the judgment of the superior court, he has appealed to this court.

The record discloses the following facts: At about four o'clock in the afternoon of October 2, 1937, during the legal season for hunting deer, S. J. Handron, a state game protector, was waiting near a railroad track for the purpose of inspecting and interrogating hunters who might pass that way. He was armed with a rifle and a revolver, but wore no distinguishing uniform. At the same time, appellant and a companion, Jerry LaCass, were walking along the railroad tracks. Each of them carried a pack sack, or "pack board," and appellant carried a rifle. As they approached Handron's place of concealment, he emerged, walked up to them, laid his rifle on the ground, and said, "Boys, I am with the game department, and I would like to see your hunting licenses and what you have killed." Without any protest, appellant dropped his pack sack to the ground and produced his hunting license. Handron examined the license and then knelt to open and inspect the pack sack. As he started to loosen the cords, appellant struck him a heavy blow on the head. He struggled for a moment and attempted to draw his revolver, but another blow from appellant rendered him unconscious. Appellant then hastily removed a slicker which was tied to the sack, picked up some rifle shells which were lying on the ground, and fled with his companion.

Shortly thereafter, some passing loggers found Handron and took him to a first aid station, where he was revived and given emergency treatment. One of them then drove him to a hospital for further treatment and hospitalization. At about five p. m., two of the loggers returned to the scene of the assault and found the pack sack. They took possession of it and took it to the logging camp, where it was stored overnight. On the next

morning, the loggers turned the pack sack over to a representative of the state game department, who took it to Aberdeen and placed it in a cold storage plant locker, where it remained at all times except when it and its contents were introduced in evidence at the two trials. The pack sack contained deer meat which was subsequently identified as the four quarters of a doe.

Appellant objects to the jurisdiction of this court and of the court below, basing his objection upon the theory that there was no law in force on October 2, 1937, which made his act a crime.

Appellant was charged in the language of Rem. Rev. Stat., § 5915 [P. C. § 2640-2], which statute was enacted in 1929. Laws of 1929, chapter 221, p. 602, § 6. By initiative in 1933, the people of the state enacted a new game code. Laws of 1933, chapter 3, p. 24. By § 13 of that initiative enactment, p. 30, the people declared:

"All laws relating to wild animals and birds and game fish and regulating or prohibiting the times, places, and manner of taking the same and the quantities that may be taken, are hereby repealed as statutes and are hereby constituted and declared to be operative and to remain in force as the rules and regulations of the state game commission, until such time as they or any of them are amended, modified, or repealed by the commission as herein provided." Rem. Rev. Stat. (Sup.), § 5855-7 [P. C. § 4-107g].

Appellant contends that Rem. Rev. Stat., § 5915, was repealed in 1933, and is no longer in force as a statute. In answer to the point that it was expressly constituted a regulation of the game commission, he argues that that part of the initiative measure which so constitutes it and gives the commission power to amend or repeal it is a delegation to the game commission of legislative power, in violation of the state constitution, Art. II, § 1, as amended by amendment VII.

We may assume that Rem. Rev. Stat., § 5915, was repealed and is no longer in force as a statute. Appellant, impliedly at least, concedes that the game commission has never set aside or amended it. This being so, the question of whether or not the 1933 enactment unlawfully delegates legislative power is not before the court, for the rule under which appellant was charged was enacted by the legislature and not by the commission, and there is no showing that the commission has attempted to exercise the legislative power which appellant states was unlawfully delegated to it. The situation before us is this: The people, by direct legislation, established a game commission and supplied it with a set of rules and regulations; appellant has broken one of *these* rules, not a rule enacted by the commission; hence, the question of unlawful delegation of legislative power is not presented.

Appellant also points out that Rem. Rev. Stat., § 5915, was not pleaded or proved as a rule of the game commission, and he argues that, since the courts cannot take judicial notice of the rules of administrative boards and commissions (*State v. Schmidt,* 128 Wash. 661, 223 Pac. 1057), the rule was not before the court. We may also assume, *arguendo,* that this is generally correct, but, here, the rule involved is no ordinary rule. It originally was a statute, and then it was, by statute, expressly made a regulation of the game commission. Because of this fact, we think that the court below was warranted in taking judicial notice of it. It appears in its entirety in the statutes (Rem. Rev. Stat., § 5915), and is included by reference in the initiative statute (Laws of 1933, chapter 3).

Appellant next assigns as error the court's refusal to grant his motion for suppression of the evidence consisting of the pack sack and its contents, which motion was based upon the theory that the evi-

dence was secured by an unlawful search and seizure. The statute to be considered here is Laws of 1933, chapter 3, p. 35, § 24; Rem. Rev. Stat. (Sup.), § 5875 [P. C. § 2606], reading as follows:

"Any member of the state game commission, the director of game, and any game protector, deputy game protector, sheriff, constable, police officer, or United States game warden, or forest officer, shall have the power to search without warrant, any person, conveyance, vehicle, game bag, game basket, game coat or other receptacle for game or game fish and any cold-storage plant, warehouse, market, tavern, boarding-house, restaurant, club, hotel, eating-house, fur store, tannery or other place where he has reason to believe that game animals, fur-bearing animals, game birds, non-game birds, harmless or song birds, or game fish or parts thereof are kept for sale, or sold, and to search all packages or boxes, which he has reason to believe contain evidence of violations of this act, and any hindrance or interference with any such officer whil [while] engaged in making such search shall be *prima facie* evidence that the person interfering with or hindering such officer is guilty of a violation of this act. Any of the officers above named may at any time seize and take possession of any game fish, game bird, non-game bird, harmless or song bird, game animals or fur-bearing animals, or any part thereof, which has been unlawfully caught, taken, or killed or which is unlawfully possessed in violation of the provisions of this act."

Appellant argues first that the statute gives law enforcement officers powers so broad that it authorizes unconstitutional searches and seizures. He also contends that, if the statute is constitutional, officer Handron's conduct exceeded his statutory authority, since he had no reason to believe that appellant's pack contained evidence of a violation of the law.

In our opinion, neither of these troublesome questions is properly before the court, for the reason that

the evidence was not actually procured through a search and seizure. The record discloses that Mr. Handron accosted appellant and LaCass and informed them that he was a game protector and asked to see their licenses and their kill. Appellant testified that he did not believe that Handron was a game warden. Nevertheless, appellant voluntarily dropped his pack and produced his license. When Handron knelt and started to loosen the bindings, appellant told him to leave the pack alone, and then struck him. While Handron was unconscious, appellant removed a slicker from the outside of the pack sack and fled. Sometime later, some private parties found the pack sack and turned it over to representatives of the game department.

It thus appears that Handron never acquired effective possession of the pack. It is difficult to regard his momentary attempt to examine the contents of the pack sack, which appellant had, for his own comfort and convenience, placed upon the ground, as a taking of possession in defiance of appellant's wishes. Certainly, he acquired no knowledge of its contents and could not have testified as to what it contained.

But, assuming that Handron made a technical seizure, it is clear that appellant immediately regained possession when he beat Handron into insensibility and then snatched the slicker from under the bindings. It seems to us, therefore, that, in legal and practical effect, appellant must be held to have abandoned his pack sack, and that the pack and its contents came into the hands of the game department and became available for evidentiary purposes, not by reason of a seizure by an officer, but by reason of the voluntary act of the private persons who subsequently found it. The question of unlawful seizure is thus not presented to the court.

■ Appellant's third assignment of error is that the court erred in admitting in evidence the contents of the pack sack, for the reason that the contents consisted of certain parts of a deer, whereas appellant was charged with unlawful possession of "one deer." This meat was identified in court as the four quarters, "two hinds and two fronts," of one doe. We think that there was no variance. That which constitutes "one deer," within the meaning of the statute here involved, is somewhat indeterminate. Certainly, appellant should not be heard to successfully contend that the carcass of a deer with only the hooves and tail missing is not "one deer." The viscera and other useless parts are usually left in the woods. It seems to us that the four quarters of a deer are sufficient to constitute one deer, within the meaning of the statute.

There is, perhaps, another reason why this assignment is without merit. From the facts that appellant was seen walking in the woods with a gun in hand and a pack on his back, and that the pack contained the meat of a deer, it would seem that the trier of fact could properly infer that, shortly before, appellant had been in possession of a whole deer. As tending to prove this fact, the butchered carcass was properly admitted in evidence. *State v. Visser*, 188 Wash. 179, 61 P. (2d) 1284.

■ Appellant finally contends that the deer meat which was admitted in evidence was improperly admitted, because it had not been properly identified as being the contents of appellant's pack sack. There is no merit in this contention. The sack was found by the loggers in the spot where appellant had dropped it. It was taken to the logging camp and stored overnight. On the next morning, game protector Paul Hughey took it into Aberdeen and placed it in a locker in cold storage. While there, it was under the control of Mr.

Hughey, who positively identified the meat introduced in evidence as the same meat which he had received from the loggers. Clearly, this was a sufficient identification of the exhibit.

The judgment and sentence appealed from are affirmed.

STEINERT, C. J., BLAKE, MAIN, and HOLCOMB, JJ., concur.

[1]Reported in 85 P. (2d) 656.