STATE OF IOWA, Appellee, v. JOHN H. SMITH, Appellant.

**Criminal law:** COMPUTATION OF TIME: STATUTES. The provisions of
1   the statute relating to the computation of time apply to criminal as well as civil actions.

**Same:** INDICTMENT: LIMITATIONS: INSTRUCTIONS. An inadvertant
2   instruction in a prosecution for obtaining money under false pretense, that if the check upon which the money was obtained was cashed on a certain date concededly within three years after the offense was committed, was harmless, where it was in fact cashed either on that date or the day preceding and within the statutory period.

**Same:** OBTAINING MONEY BY FALSE PRETENSE: VENUE. Defendant
3   falsely represented by a letter written in Polk county and mailed to a party in Nebraska that he was the owner of certain real estate, and enclosed a deed thereto, as security for a loan of money. The party defrauded mailed his check on a bank in Cass county to defendant, who deposited it to the credit of his account in a bank in Polk county and checked the funds out. The Polk county bank realized on the check through the clearing house and ·it was finally paid by the Cass county bank. *Held,* that the crime of obtaining money by false pretense was completed when defendant deposited the check in the Polk county bank, rather than when it was cashed by the bank on which it was drawn, and that the district court of Polk county had jurisdiction of the offense.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

SATURDAY, NOVEMBER 22, 1913.

DEFENDANT was indicted, tried, and convicted of the ·

crime of obtaining money by false pretenses.   He appeals.
—*Affirmed.*

*Franklin & Miller,* for appellant.

*Geo. Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

PRESTON, J.—Defendant falsely represented that he was the owner of certain real estate in Des Moines, Iowa.   By such false representations, he obtained $5,000 from one Thorley, agreeing to give his note therefor and a deed back, which was to be held for a year unless defendant should sooner pay to Thorley the sum of $5,000.   A note for this amount, together with a deed from defendant and a contract signed by him, were sent by mail to Thorley in Nebraska.   The note was not paid, and defendant did not own the property.   About September, 1908, defendant went to the home of Thorley, near Springview, Neb., to see Thorley's daughter.   At that time defendant said to Thorley that he was on a deal and might want to use some money, and asked if he could get it of Thorley.   Later, and on September 23, 1908, defendant wrote Thorley from Des Moines, Polk county, Iowa, a letter which contains the false representations; the deed also recited that defendant was the owner of the real estate.   The deed, note, and contract, before referred to were inclosed in this letter. The letter and other papers were received by Thorley at Springview, Neb.   Mr. Thorley drew his check for $5,000, dated October 2, 1908, and mailed it at his home to defendant at Des Moines, with a letter.   The check was drawn on the Whitney Bank at Atlantic, Cass county, Iowa, and was payable to the order of defendant.   It was presented to the Century Savings Bank in Des Moines by defendant October 5, 1908, for credit, and deposited by him and credited in his account for the amount of the check.   The money was drawn

out in the regular course of business by checks drawn by defendant against his account. The Century Savings Bank did not send the check to the Whitney Bank, but received the money through the clearing house. The Des Moines bank received credit for it, and guaranteed to reimburse the bank paying it if not paid by the Whitney Bank. The check went through in the regular way; the Whitney Bank either sent the money to their correspondent or paid the money. The cancellation stamp shows payment by the Whitney Bank October 6, 1908. There was another letter from defendant to Thorley after the transactions just narrated, and other evidence as to the title, and other matters which are not necessary to a determination of the points raised. As stated, the check was deposited in the Des Moines bank by defendant on October 5, 1908. The indictment was returned October 5, 1911, which defendant contends was not in time. Defendant introduced no evidence. There is therefore no dispute as to the facts. Defendant moved the court for a directed verdict, which was overruled, and after the jury returned a verdict of guilty he moved in arrest of judgment on the ground that the court had no jurisdiction because the money was received and obtained by defendant, if at all, in Cass county, and not in Polk county. This motion was also overruled, and judgment pronounced.

I. Defendant contends that if either the false pretenses were made in Polk county, or the money was obtained in Polk county, more than three years elapsed prior to the finding of the indictment, and he cites, as sustaining his contention: *People v. Wood,* 10 N. Y. Leg. Obs. 61; *State v. Asbury,* 26 Tex. 83; *Norris v. Hundred de G.,* 1 Brownlow & G. 156 (Hobart, 139).

1. CRIMINAL LAW: computation of time: statutes.

Our statute (section 48, par. 23) provides as follows: "In computing time, the first day shall be excluded and the last included, unless the last falls on Sunday, in which case the time prescribed shall be extended so as to include the whole of the following Monday." The statute makes no dis-

tinction between civil and criminal actions. Code, section 5371, provides: "All the provisions relating to mode and manner of the trial of civil actions, report thereof, translation of the shorthand reporter's notes, the making such report and translation a part of the record, and in all other respects, apply to the trial of criminal actions." Code, section 5483, provides: "The rules of evidence prescribed in civil procedure shall apply to criminal proceedings as far as applicable and not inconsistent with the provisions of this chapter." These provisions of the statute do not have an exact bearing, perhaps, but indicate that the same rule applies in criminal as in civil cases, unless otherwise provided. The later cases seem to hold that the method of computing time applies to criminal, as well as civil, cases. *Richter v. State,* 156 Ala. 127 (47 South. 163); *State v. Fleetwood,* 143 Mo. App. 698 (127 S. W. 934; 49 L. R. A. at 224, note).

We see no reason why it should not be so. If the money was obtained by defendant on October 5, 1908, the indictment was in time. Whether it was obtained on that date will be considered later.

II. The court instructed the jury that if they found that the check was cashed on the 6th day of October, 1908, they might then find that the indictment was brought within three years after the commission of the offense. Counsel says: "Just why the court gave this instruction we do not understand, for the evidence shows, without contradiction, that the check was cashed by the defendant on the 5th day of October, and at no other time." The check was cashed by defendant in Polk county on October 5th and by the bank in Cass county on October 6th. Doubtless the court gave this date from inadvertence. Counsel concedes, if it was cashed on October 6th, the indictment was in time. It was either the 5th or 6th, and, if it is held that defendant obtained the money in Polk county on October 5th, we cannot see that defendant was prejudiced by the court giving the date as October 6th.

2. SAME: indictment: limitations: instruction.

III. There was no error in admitting the testimony of Mrs. Garner. Appellee has filed an additional abstract as to this, and it appears that she detailed to defendant the conversation she had with her husband in regard to selling the property.

IV. The point most strongly contended for by appellant is that the district court in Polk county had no jurisdiction; that the money was not obtained in Polk county, nor the false pretenses made in that county; that defend-

3. SAME: obtaining money by false pretense: venue.

ant should be held to answer, if at all, in Cass county, where the check was ultimately paid by the bank upon which it was drawn. He relies on the following cases: *State v. Gibson,* 132 Iowa, 53; *Graham v. People,* 181 Ill. 477 (55 N. E. 179, 47 L. R. A. 731); *State v. Briggs,* 74 Kan. 377 (86 Pac. 447, 7 L. R. A. [N. S.] 278, 10 Ann. Cas. 904); *Com. v. Pettes,* 114 Mass. 307; *Com. v. Wood,* 142 Mass. 459 (8 N. E. 432); *Com. v. Taylor,* 105 Mass. 172; *State v. Lichliter,* 95 Mo. 402 (8 S. W. 720); *Norris v. State,* 25 Ohio St. 217 (18 Am. Rep. 291); *Lindsey v. State,* 38 Ohio St. 507; *People v. Griffin,* 2 Barb. (N. Y.) 427; *State v. Shaeffer,* 89 Mo. 271 (1 S. W. 293); *Connor v. State,* 29 Fla. 455 (10 South. 891, 30 Am. St. Rep. 126); *People v. Adams,* 3 Denio (N. Y.) 190 (45 Am. Dec. 468); *Stewart v. Jessup,* 51 Ind. 413 (19 Am. Rep. 739); *People v. Rathbun,* 21 Wend. (N. Y.) 509; *In re Carr,* 28 Kan. 1; *State v. Round,* 82 Mo. 679; *Com. v. Van Tuyl,* 1 Metc. (Ky.) 1 (71 Am. Dec. 455).

These cases hold to the general rule that the crime of false pretenses is completed where the goods or money is obtained, and that, if the pretenses are made within one jurisdiction and the money or property is obtained in another, the person making the representations must be indicted within the latter jurisdiction. Some of these cases proceed on the theory that where a party is indicted for obtaining a draft, and the representations are made in one county and the draft is mailed in another, the party from whom the draft is ob-

tained surrendered possession of it by placing it in the post office, addressed to the party obtaining the money; that, under such a state of facts, the Post Office Department is deemed to be the agent of the party receiving it, in the same way that a common carrier would have been his agent if the draft had been given to it for delivery to him. *State v. Briggs, supra; Com. v. Wood, supra.* And so, where merchandise is obtained under such circumstances, it has been held that the venue is in the county where the goods were delivered to the carrier, on the theory that a delivery to the carrier is a delivery to the consignee. *Com. v. Taylor, supra.* Under that doctrine, if it applies here, defendant should have been indicted in Nebraska, and not in Cass county, Iowa, as defendant contends, or in Polk, as the state claims. But, as stated, defendant contends that the venue should be laid in the county where defendant obtained or received the money, which he says is in Cass county where the check was finally paid by the bank upon which it was drawn. And that is the question in the case, whether he received the money in Polk or Cass county. That his depositing it to his account in the Des Moines bank in the manner shown is equivalent to his getting the money is not questioned by appellant. But his claim is that Thorley was not defrauded until the bank upon which the check was drawn had paid it and charged it to Thorley's account. This matter will be referred to later, but we suggest now that the moment defendant negotiated it to the Des Moines bank Thorley became absolutely liable; there being no question as to its negotiability. In the cases cited there was no question, as here, that the draft or check was first cashed by defendant at one place and later cashed or paid by the bank upon which it was drawn. None of the cases cited seem to involve this precise point. We are not called upon to determine the rule as to personal property other than a check.

In *Graham v. People, supra,* it is held that the prosecution should be instituted in the county where the offense was

consummated, and not in that where preliminary acts were done; that the preliminary acts might constitute an attempt. It occurs to us that there are at least three steps in the development of the completed offense of obtaining money by false pretenses, in addition to questions of scienter, etc.:

(1) The representations, which in this case were made in Des Moines by letter; so far there is no representation.

(2) The receipt thereof by Thorley in Nebraska, and his action thereon by making and mailing his check. In our opinion, there is yet no completed offense as to the defendant; Thorley had parted with the check, it is true, but he would not be defrauded until the check is paid, or negotiated to an innocent holder. Suppose that, after Thorley mailed his check, the mail car and check had burned, or for some other reason had never been received by defendant, or suppose after mailing it, and before it was received by defendant, or before he had negotiated it, Thorley had learned of defendant's fraud and had stopped payment of the check by notifying the bank upon which it was drawn, and the Des Moines bank, or all banks, and it was not cashed by defendant or any one; could it be claimed that defendant had obtained the money, or that Thorley had parted with the money or been defrauded? Defendant might be guilty of an attempt in Nebraska perhaps, and doubtless the consummated offense would involve an attempt; in the illustration there might be an attempt in Nebraska, but no completed offense until finally consummated, and at the place where consummated.

(3) The final consummation of the crime by defendant obtaining and receiving the money. Defendant did actually receive the money from the Des Moines bank, and that moment Thorley was bound to pay it. Defendant having actually received the money in Polk county, it seems to us it would be technical to say he did not receive it there. It was his purpose to get the money, and when he got it Thorley was defrauded.

In the case of *Burton v. U. S.*, 196 U. S. 283 (25 Sup. Ct. 243, 49 L. Ed. 482), the defendant was a member of the United States Senate representing the state of Kansas. He was indicted for receiving $500 for services rendered for a grain company before the United States Post Office Department in a matter then pending before the department in which the United States was interested. The money he received for his services was sent to him by check drawn upon a St. Louis bank and received by him in the city of Washington, where he cashed the check in one of the banks. He was indicted and tried in the St. Louis jurisdiction, and the Supreme Court reversed the case on the ground that the venue was in Washington, D. C., where the check was cashed by the defendant. We shall refer to this case again later in the opinion.

Appellant relies mainly upon the case of *State v. Gibson*, 132 Iowa, 53. In that case it was held that a prosecution could be had in the county where fraudulent insurance applications were received and acted upon, and where the check was paid by the bank upon which it was drawn, because of the statute, section 5157, which provides that when a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the offense occur in two or more counties, jurisdiction thereof is in either county. But it was not decided that a defendant could not have been prosecuted in the county where he first received the money on the check. The court there said: "Aside from the statute, there may be some doubt as to the venue of the offense under such a state of facts as is here disclosed." The opinion then cites some of the cases now relied upon by appellant, and continues: "Without deciding this question, which we regard largely a moot one, it is enough to say that our statute was borrowed from New York, and, under the decisions in that state construing this statute, the district court of Polk county had jurisdiction."

In the present case the letter and deed in which the rep-

resentations were contained were written and made in Des Moines, and, while these alone would not constitute a false representation within the law, yet they were forwarded by him to Thorley and acted upon, and the check sent to Des Moines, where it was cashed by defendant. These acts are a part of the crime, so that the crime was committed partly in Polk county, and comes within the statute.

There is some language in the opinion in the *Gibson* case to the effect that defendant should be held to have received the money from the insurance company at the place where the check was cashed by the bank upon which it was drawn, and that the intermediate bank which took it up, or advanced defendant the money thereon, was defendant's agent to forward the check and receive the money thereon for defendant. The writer of the opinion then says: "However this may be, there was no variance." The language above quoted as to agency was used in that part of the opinion which discussed the question as to whether there was a variance between the allegations and proof. In that case the indictment charged defendant with having received money; whereas, the proof was that he received a check. It was not decided that the jurisdiction was in Polk county alone, or that the intermediate bank was the agent of defendant, or that defendant received the money when paid by the bank upon which the check was drawn, because the court had already determined the question of venue, or jurisdiction, by holding that under the statute the case could be prosecuted in Polk county, for the reason that the crime was partly committed there. The court said in so many words that the statute settled it. We do not now decide that this defendant could not have been prosecuted in Cass county under the statute.

We shall now refer to some of the cases on the question as to whether, under such circumstances, the intermediate bank is the agent of the person cashing the check at such bank. It would be so, perhaps, if the check had been left to be forwarded for collection, but not where it is negotiated or sold.

In the *Burton* case, *supra,* the facts are very much like the present case, in so far as the cashing and payment of the check is concerned, and the contention of the government in that case was the same as defendant's contention here; that is, that the party perpetrating the fraud did not receive the money until it was finally paid by the bank upon which it was drawn. In that case the court said:

There was no oral or special agreement made between the defendant and the bank at the time when any one of the checks was deposited and credit given for the amount thereof. The defendant had an account with the bank, took each check when it arrived, went to the bank, indorsed the check which was payable to his order, and the bank took the check, placed the amount thereof to the credit of the defendant's account, and nothing further was said in regard to the matter. In other words, it was the ordinary case of the transfer or sale of the check by the defendant and the purchase of it by the bank, and upon its delivery to the bank, under the circumstances stated, the title to the check passed to the bank, and it became the owner thereof. It was in no sense the agent of the defendant for the purpose of collecting the amount of the check from the trust company upon which it was drawn. From the time of the delivery of the check by the defendant to the bank it became the owner of the check; it could have torn it up or thrown it in the fire, or made any other use or disposition of it which it chose, and no right of defendant would have been infringed.

The fact that the defendant would have been liable to the Des Moines bank in case Thorley had no funds in the Cass county bank to meet the check is not material. It was so held in the *Burton* case. In the *Burton* case it was claimed by counsel for the government that the Riggs bank of Washington and its correspondents, in all matters pertaining to the circulation and cashing of the check after it had been paid by them until it reached the Commonwealth Trust Company, the bank upon which it was drawn, were acting as

agents of the accused in securing the money, and that, when the money called for by the check was paid at St. Louis by the trust company on which it was drawn, it amounted to a payment of the money to the accused at St. Louis. . That was the important question in the case, for unless the court would hold that the money was in fact received in Missouri, then the prosecution must fail. In that case the court held that, the moment the check was taken to the bank in Washington and the bank received it and placed the money to the credit of the defendant, that moment he received the money paid by the company employing him in St. Louis, and the venue of the offense was in Washington, D. C., and not in St. Louis. In delivering the opinion of the court, Mr. Justice Peckham said:

The general transactions between the bank and a customer in the way of deposits to a customer's credit and drawing against the account by the customer constitute the relation of creditor and debtor. As is said by Mr. Justice Davis, in delivering the opinion of the court in *Bank of the Republic v. Millard,* 10 Wall. 152, page 155 (19 L. Ed. 897), in speaking of this relationship: 'It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst, and Campbell in the House of Lords in the case of *Foley v. Hill,* 2 Clark & Finnelly, 28, and they all concurred in the opinion that the relation between a banker and customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not take of a fiduciary character, and the great weight of American authorities is to the same effect.' When a check is taken to a bank, and the bank receives it

and places the amount to the credit of a customer, the relation of creditor and debtor between them subsists, and it is not that of principal and agent. This principle is held in *Thompson v. Riggs*, 5 Wall. 663 (18 L. Ed. 704), and also in *Marine Bank v. Fulton Bank*, 2 Wall. 252 (17 L. Ed. 785). See, also, *Scammon v. Kimball*, 92 U. S. 362, 369 (23 L. Ed. 483); *Davis v. Elmira Savings Bank*, 161 U. S. 275, 288 (16 Sup. Ct. 502, 40 L. Ed. 700). The case of *Cragie v. Hadley*, 99 N. Y. 131 (1. N. E. 537), contains a statement of the rule as follows, per Andrews, J.: 'The general doctrine that upon a deposit made by a customer, in a bank, in the ordinary course of business, or of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question. *Commercial Bank of Albany v. Hughes*, 17 Wend. [N. Y.] 94; *Metropolitan Nat. Bank v. Loyd*, 90 N. Y. 530. The transaction in legal effect is a transfer of the money, or drafts or checks, as the case may be, by the customer to the bank upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money, drafts, or checks, on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business.' In *Metropolitan Nat. Bank v. Loyd*, 90 N. Y. 530, one of the cases referred to by Judge Andrews, Judge Danforth, in speaking of the effect of placing a check to the credit of a depositor in his account with the bank, said that: 'The title passed to the bank, and they (the checks) were not again subject to his control. [See *Scott v. Ocean Bank in City of New York*, 23 N. Y. 289, and other cases cited in the opinion.] . . . It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount, and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. He was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of Murray to command payment at once was of the very nature and essence of the transaction. On the other hand, the bank, as owner of the check, could confer a perfect title upon its transferee, and therefore, when by its directions the plaintiff received and

gave credit for it upon account, it became its owner and entitled to the money which it represented. . . . If, as the appellant insists, the check had been deposited for a specific purpose—for collection—the property would have remained in the depositor; but there is no evidence upon which such fact could be established, nor is it consistent with the dealings between the parties, or with any of the admitted circumstances. These show that it was the intention of both parties to make the transfer of the check absolute, and not merely to enable the bank to receive the money upon it, as Murray's agent.' The same principle is set forth in *Taft v. Bank*, 172 Mass. 363 (52 N. E. 387). In that case the court said: 'So when, without more, a bank receives upon deposit a check indorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker.'

In the case at bar the proof was not disputed. The checks were passed to the credit of defendant unconditionally, and without any special understanding. The custom of the bank to forward such checks for collection is a plain custom to forward for collection for itself. The only liability of defendant was on his indorsement. All this made a payment at Washington, and as a result there was a total lack of evidence to sustain the sixth, seventh, eighth, and ninth counts of the indictment. The court should have, therefore, directed a verdict of not guilty on those counts. This is not a case of the commencement of a crime in one district and its completion in another, so that under the statute the court in either district has jurisdiction. Rev. St. section 731 (U. S. Comp. St. 1901, page 585). There was no beginning of the offense in Missouri. The payment of the money was in Washington, and there was no commencement of that offense when the officer of the Rialto Company sent the checks from St. Louis to defendant. The latter did not thereby begin an offense in Missouri.

We have quoted from that case at some length because the case is in point and a number of cases are reviewed. To the same effect, see further cases of *People v. Dimick*, 107 N. Y. 33 (14 N. E. 178); *Bates v. State*, 124 Wis. 612 (103 N. W. 251, 4 Ann. Cas. 365); 12 Cyc. 848.

In our opinion, under the circumstances of this case, defendant received the money in Polk county, the crime was consummated there, and that court had jurisdiction. The judgment is therefore *Affirmed*.

WEAVER, C. J., and LADD and EVANS, JJ., concur.