[No. 32138. Department Two. February 27, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH J. PHILLIPS, *Appellant*.[1]

[1]Reported in 253 P. (2d) 919.

*Tonkoff & Holst* and *Blaine Hopp, Jr.*, for appellant.

*W. R. Cole*, for respondent.

FINLEY; J.—This is an appeal from convictions on one information charging grand larceny and on two informations charging first degree forgery. On motion of the prosecution, the informations were consolidated and tried as separate counts in one case.

Ralph J. Phillips was the manager of Phillips Pontiac Co., Inc., a corporation, doing business in Yakima, Washington. In the grand larceny information, the state charged that defendant Phillips obtained $1,434.30 from the Yakima branch of the General Motors Acceptance Corporation, hereinafter designated as G.M.A.C., by "false and *fraudulent* pretenses, representations, trick and device, to-wit: That the said defendant . . . did falsely represent . . . that there was no other contract and/or obligation owing on a 1949

Pontiac sedan . . ., that thereupon the said defendant thereupon assigned to" G.M.A.C. a conditional sale contract on the 1949 Pontiac sedan. The information then refers to and contains a printed copy of the conditional sale contract. At the end of the conditional sale contract, but distinct therefrom, certain printed material appears, captioned "DEALERS' RECOMMENDATION, ASSIGNMENT AND GUARANTY," reading, in part, as follows:

"For value received, undersigned *does hereby sell, assign and transfer to the General Motors Acceptance Corporation his, its or their right, title and interest in and to the within contract,* herewith *submitted for purchase* by it, and *the property covered thereby* and authorizes said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same.

"The *undersigned certifies* that said contract arose from the sale of the within described property, *warranting that title to said property was* at time of sale *and is now vested in the undersigned free of all liens and encumbrances*; that said property is as represented to the purchaser of said property by the undersigned and that statements made by the purchaser of said property on the statement form attached hereto are true to the best of the knowledge and belief of the undersigned." (Italics ours.)

The grand larceny information then charges that, "in truth and in fact, said *pretenses* and representations, trick and device, . . . *were in all respects utterly false and untrue* . . . " (italics ours) in that the *defendant previously* had assigned a conditional sale contract on the same 1949 Pontiac sedan to the National Bank of Ellensburg, Washington. The information then refers to and contains a copy of the contract assigned to the bank. At the end of the latter-mentioned contract, but distinct therefrom, certain printed material appears, captioned, "ASSIGNMENT," which, in part, reads as follows:

"FOR VALUE RECEIVED *the undersigned does hereby sell, assign, and transfer to The Washington National Bank* of Ellensburg, Wash., hereinafter called 'bank,' its successor and assigns, *all of the right, title, and interest of the undersigned* in and *to the within conditional sale contract* hereinafter called 'said contract,' *in and to the property therein*

*described,* hereinafter called 'said property,' in and to the unpaid balance of the time price and all other moneys due or to become due on said contract; this assignment shall be

"Cross out the one "not applicable)

    { with recourse against undersigned and
    with full guarantee of payment to bank
    of all installments and moneys due or
    to become due upon said contract

"  .  .  .

    "*The undersigned does hereby covenant and warrant* that: (a) *said contract is valid,* binding, *and enforcible* and the same has been executed and delivered in accordance with the laws of the State of Washington; (b) said property was delivered into said purchaser's possession within twenty-four hours after date of said contract and is now in said purchaser's possession at purchaser's address herein given; (c) no liens nor claims against said property exist except the right of said purchaser as stated in said contract; and (d) said property has not been and is not being used for any unlawful purpose whatsoever."

The assignment to the bank was executed in the name of Phillips Pontiac Co., Inc., signed R. J. Phillips. The assignment to G.M.A.C. was also executed by the Phillips Pontiac Co., Inc., and signed by R. J. Phillips, Manager. The name of Frank E. Schmoldt, defendant's brother-in-law, was written (admittedly forged by defendant Phillips) on the contract dated October 23, 1950, which was assigned to the bank. Similarly, Frank E. Schmoldt's name (admittedly forged by defendant) was written on the contract dated November 2, 1950, which was assigned to G.M.A.C. Thus, Frank E. Schmoldt's name appeared in both conditional sales contracts, and he was represented to be the purchaser of the 1949 Pontiac sedan, obligated to make payments to the owner or assignee of the contracts.

Defendant refers to and lifts out of context that portion of the information which charges him with falsely representing to G.M.A.C., "that there was no other contract and/or obligation owing on" the 1949 Pontiac sedan. The contention is made that a seller who represents there are no outstanding encumbrances against the property sold is not guilty of the crime of larceny by false pretenses, where the only encumbrance against such property is void because of

forgery. Defendant cites *State v. Matthews*, 44 Kan. 596, 25 Pac. 36, and *State v. Wilson*, 73 Kan. 334, 80 Pac. 639, 84 Pac. 737, in support of his contention. In further support thereof, in his supplemental memorandum of authorities, defendant refers to RCW 62.01.023, which reads:

"FORGERY—EFFECT. Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

The gist of this contention of defendant is that there was no misrepresentation or false pretense as a result of the assignment of the contract to G.M.A.C., because, by operation of law and in fact, there was no valid contract or obligation owing on the 1949 Pontiac sedan except the first Schmoldt contract, dated October 23, 1950, which was a forgery, and consequently, a nullity and of no legal effect whatsoever; and thus, in the absence of proof of misrepresentation or false pretense, the state failed to prove the commission of the crime of grand larceny, as charged in the information.

Defendant's contention is ingenious, diverting, and distracting. At first blush and even after considerable consideration, the logic of defendant's contention seems compelling. However, upon analysis, we think this contention breaks down. The portion of the information charging defendant with the misrepresentation or false pretense, "that there was no other contract and/or obligation owing" on the 1949 Pontiac sedan, actually charges him with making an *implied* warranty that the defendant had good legal title to the automobile. *State v. Johnston*, 6 Wn. (2d)·141, 106 P. (2d) 1067. This language contained in the information is not found in the G.M.A.C. assignment. The particular language of the information merely paraphrases the language of the G.M.A.C. assignment, which warrants "that title to" the Pontiac sedan "was at the time of sale and is now vested in the undersigned *free of all liens and encumbrances*." When

the phrase, "there was no other contract and/or obligation owing," is lifted out of context, some considerable significance can be attributed to it. However, in the information, the particular phraseology is irrevocably tied up with the other language of the G.M.A.C. assignment and with other language in the charging parts of the information. With respect to the latter, we note and emphasize the information charges that "in truth and in fact," the false pretenses and misrepresentations, trick, and device, so made by defendant to G.M.A.C., *were in all respects utterly false and untrue* in this, "*that there was outstanding at that time a prior conditional sale contract which had been assigned to the Washington National Bank of Ellensburg, Washington, on the same vehicle, in words and figures as follows.*" (Italics ours.) The conditional sale contract, together with the assignment to the bank, is thereupon set out in the information.

Assuming that the conditional sale contract, sold or assigned to the bank, was a forgery, it does not follow that the *assignment* was forged, or that it was invalid or a legal nullity. In fact, it was not. As worded, the assignment constituted a purported sale of both (1) a conditional sale contract to G.M.A.C. and (2) the property covered thereby, namely, the 1949 Pontiac sedan. In addition to this, the assignment warranted that the assignor had title to the property described in the forged conditional sale contract. The assignment to G.M.A.C. was executed after a comparable assignment, covering the identical vehicle, had been executed to the bank, in which the assignor had warranted that he had good title to the automobile, and in which the assignor sold to the bank, not only a conditional sale contract but the 1949 Pontiac automobile itself, divesting himself of any title to the automobile.

The provisions of the negotiable instrument law, RCW 62.01.023, have no application to the assignments executed by defendant to the bank and to G.M.A.C. These were not forged. Because of the circumstances indicated, we do not choose to follow the *Wilson* case, *supra,* cited by defendant. In analyzing the problem presented by defendant's conten-

tion, we have clearly separated in our minds the admittedly forged conditional sales contracts from the assignments to the bank and to G.M.A.C., the latter covering both the conditional sales contracts and the 1949 Pontiac sedan.

■■■■ All of the foregoing discussion leads us to the basic conclusion that the information charged a crime, namely, that by false pretense, trick, or device, defendant assigned or sold the contract and the car to G.M.A.C., falsely warranting that he had title to the car, when in fact he had previously assigned or sold it to the bank; furthermore, we think that the state's evidence was sufficient to sustain a conviction of the crime. Stated simply, the information was so drawn that the defendant can find no refuge or defense in admitting his forgeries and claiming that these negated the efforts of the state to charge him with the crime of grand larceny, as set out in the information. Our conclusion is further supported by *State v. Johnston, supra,* p. 144, wherein it was said:

"When the mortgages and bill of sale were delivered to the bank, there was an implied warranty that they were what, on their face, they purported to be.

"In *State v. Calkins,* 73 Iowa 128, 34 N. W. 777, it was said:

" 'The instruments purported to be the obligations of Lawrence, and by the act of offering them for sale, and selling them, defendant represented them to be genuine.'

"In 2 Williston on Contracts (Rev. ed.), 1291, § 445, the author, after referring to the development of the law of implied warranty in the sale of goods during the nineteenth century, stated:

" 'Accordingly, one who assigns for value a chose in action impliedly warrants in the absence of a manifestation of a contrary intention that the claim is genuine and legally enforceable to the amount, if any, specified in the assignment.' "

■■■■ Under the first assignment of error, appellant also contends that the grand larceny and the forgery charge involving G.M.A.C. are repugnant, or mutually inconsistent. Assuming, without deciding, that this argument may be considered for the first time on appeal (*State v. Swartz,* 108 Wash. 21, 182 Pac. 953), we think that the contention is without merit. In *State v. Lindsey,* 193 Wash. 241, 74 P. (2d)

1021, charges based on forgery and grand larceny were held not to be mutually inconsistent.

Further, any contention that the forgery informations should have been dismissed for insufficiency of evidence supporting them is without merit, in view of the fact that appellant admitted forging the first Schmoldt contract, which was assigned or sold to the bank; and further, admitted uttering the Hurst contract when he knew it was a forgery. (The Hurst contract, mentioned by name here for the first time, was the subject of a separate information or count.) The assignment of this contract to the bank was executed by the Phillips Pontiac Co., signed R. J. Phillips.

It is further contended by appellant that none of the acts relative to the false-pretense charge took place in Kittitas county; consequently, that the superior court there had no jurisdiction of the particular charge. Appellant argues that the gravamen of the offense charged was the obtaining of the check from G.M.A.C. in Yakima county, and that venue properly lies in that county. The state, however, relies on RCW 10.25.020, the purpose of which, unquestionably, was to change the common-law rule regarding venue in multiple element offenses. The state emphasizes that the appellant's contentions could be meritorious only if the prosecution had been for false pretenses in obtaining the check rather than, as here, for obtaining the money or credit represented by the check. The record is conflicting as to where the false representations were made, but permits an inference that they took place in Yakima county. However, it is undisputed that appellant deposited the check in a bank in Kittitas county and there received immediate credit for it in connection with his account at the bank.

RCW 10.25.020 reads as follows:

"Offenses committed in two or more counties. If a public offense is committed partly in one county and partly in another, or the act or its effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

As noted above, the statute was passed to obviate legal and logical difficulties relating to venue in multiple element

offenses where only part of a crime has been committed in one county. The statute has been construed in a number of cases: *State v. Knutsen*, 168 Wash. 633, 12 P. (2d) 923; *State v. Moore*, 189 Wash. 680, 66 P. (2d) 836; *State v. Ashe*, 182 Wash. 598, 48 P. (2d) 213; *State v. Dillon*, 188 Wash. 265, 62 P. (2d) 38; and *State v. Bogart*, 21 Wn. (2d) 765, 153 P. (2d) 507. However, we have not passed upon a factual situation identical to the one in the instant case, where false representations are made in one county, a check there obtained is subsequently deposited in a bank located in another county, and immediate credit is given to the defendant by the bank of deposit. Obviously, the question is whether part of the crime was committed in the second county so that, under the provisions of RCW 10.25.020, venue can properly be laid there.

The distinctions between an information charging one with obtaining money by false pretenses through the means of a check and an information based upon fraudulently procuring the check itself are extensively discussed in an annotation, 141 A. L. R. 210. Unquestionably, there is a conflict of authority as to whether an offense is complete when the check is obtained, or only when the check is cashed or bank credit is obtained by deposit of the check. In the recent case of *State v. Hastings*, 77 N. D. 146, 41 N. W. (2d) 305, a statute was involved almost identical in phraseology to RCW 10.25.020. The court there distinguished between the act of obtaining a check and the act of obtaining cash or credit by negotiating or depositing the check in the bank, holding that the crime was not complete until the check was cashed or deposited for credit.

It is our view that RCW 10.25.020 was enacted specifically to cover problems of venue similar to the one involved in the case here on appeal. We adopt the line of reasoning represented by *State v. Hasting, supra, State v. Smith*, 162 Iowa 336, 144 N. W. 32, and hold that the crime of grand larceny, as charged in the information in the instant case, was not completed until credit for the check was obtained in Kittitas county. Hence, under the statute, the

trial court did not err in taking the position that it had jurisdiction to hear and dispose of the crime of grand larceny.

The second assignment of error questions the trial court's instruction No. 9, which reads:

"You are instructed that the mere uttering, that is, the passing of a forged instrument, is of itself a circumstance tending to show knowledge of its falsity, which you may consider in determining this case. I mean by that, if you find from the evidence that this forged instrument described in the information was forged, that is, falsified, and you further find that it was uttered, that is, passed by the defendant now on trial, then you have a right to consider these facts in determining whether or not the defendant now on trial knew that it was forged at the time it was uttered."

It is contended by appellant that this instruction was highly prejudicial because it assumes the existence of a fact in issue—that is, the forged nature of the instrument involved. At the trial, appellant admitted that he forged the first Schmoldt contract, sold to the bank, dated October 23, 1950; furthermore, that he knew the other conditional sale contract—that is, the Hurst contract—was forged, when he sold it to the bank. Appellant's contention is without merit. It is not error to predicate an instruction on facts admitted at the trial. *State v. Belknap*, 44 Wash. 605, 87 Pac. 934; 1 Blashfield's Instructions to Juries 260, 261, § 114.

In connection with this instruction, there is no merit in appellant's further contention that the instruction obviated the duty of the state to prove defendant's guilt beyond a reasonable doubt. The trial court instructed the jury that all of the instructions were to be construed together. In the trial court's instruction No. 5, the jury was specifically and adequately charged as to the concept of reasonable doubt. As stated in *State v. Adams*, 144 Wash. 363, 258 Pac. 23, instructions must be read as a whole; they cannot be wrenched out of context to serve as a basis for assignment of error.

Appellant's fifth assignment of error questions the refusal of the trial court to give appellant's proposed instruction No. 2, which reads as follows:

"You are instructed that before you can convict the defendant of forgery it is necessary for the State to prove beyond a reasonable doubt that the complaining witness did not know the documents presented to them were forgeries.

"I therefore instruct you that if the State fails to prove beyond a reasonable doubt no knowledge of the complaining witnesses that said instruments were forged, you must acquit the defendant."

Appellant's seventh assignment of error goes to the refusal of the trial court to instruct, as requested in appellant's proposed instruction No. 4, which reads as follows:

"You are instructed that if any of the instruments alleged in the informations filed against the defendant alleging forgery, that the State is required to prove beyond a reasonable doubt that the complaining witnesses had no knowledge of the alleged forgery; otherwise, you must acquit the defendant."

Appellant contends the above instructions were proper because the testimony of a bank official, Goodwin Chase, revealed knowledge on his part that the conditional sales contracts involved were forged and were carried by the bank to serve certain ends or purposes regarded as important by the bank. There is no merit in appellant's fifth and seventh assignments of error. The crime of forgery was complete when the forged signature was affixed to the contracts with an intent to defraud. Lack of knowledge on the part of the person defrauded by the forgery is not an element of the crime of forgery. 37 C. J. S., Forgery, 33, 34, § 3.

We have considered appellant's other assignments of error. The most significant of these relate to offers of proof by the appellant to show that certain officials of the bank and certain officials of G.M.A.C. had knowledge that the conditional sales contracts sold to their corporate employers were forgeries, and that such contracts were purchased and

carried to serve the interests of the corporate employees or their corporate employers. The bank and the G.M.A.C. were the parties defrauded. If the corporate officers or agents were coconspirators, or if they were otherwise parties to the crime, their conduct did not make the acts of the defendant any less criminal in nature.

Having discussed in detail several of appellant's assignments of error, and feeling that these and appellant's other assignments (considered but not discussed in detail) are without merit, the judgment of the trial court must be and it is hereby affirmed.

SCHWELLENBACH, HILL, HAMLEY, and OLSON, JJ., concur.

June 18, 1953. Petition for rehearing denied.