**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| EQUITY RESIDENTIAL MANAGEMENT, LLC, d/b/a PEARL,<br><br>          Appellant,<br><br>          v.<br><br>MANUEL SANCHEZ CASTRO and GABRIELLA ENRIGUE,<br><br>          Respondents. | No. 87717-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Equity Residential Management, LLC (ERM) appeals from a final judgment in favor of its former tenant, Manuel Sanchez Castro, on its breach of contract claim against Castro for unpaid rent. At issue here, Castro filed a motion for summary judgment arguing he was not liable to ERM for unpaid rent because he had vacated the leased apartment and his former roommate, Gabriela Enrigue, had forged his signature on a new lease.[1] The trial court granted Castro's summary judgment motion as well as his subsequent motion for attorney fees and costs. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] ERM also asserted a breach of contract claim against Enrigue. A default judgment was entered against her and is not at issue in this appeal.

I

Castro and Enrigue participated in a long-distance relationship over the course of several years during which Castro resided in Mexico and Enrigue lived in Seattle in an apartment rented from ERM. Although Castro cosigned multiple leases on the Seattle apartment, Enrigue paid the rent. On several occasions over the years of this arrangement, the term of the lease expired and the tenancy converted to month-to-month, consistent with the terms of the lease, until Enrigue and Castro executed a new lease with more favorable rental rates.

The last lease Castro signed was for a term commencing February 3, 2019 and expiring May 6, 2019 (the "2019 lease"). The relationship between Castro and Enrigue deteriorated in the spring of 2019. Castro e-mailed ERM in March of 2019 to ask when the lease ended, and ERM informed him the lease expired in May "unless you are extending further." Castro did not respond to ERM's e-mail, nor did he respond to ERM's e-mail several weeks later asking if he wished to extend the lease, believing "I don't have to give any notification of moving out because I'm not living there" and "if I'm not signing a new contract, then I'm completely out of the situation."

When the term of the 2019 lease expired on May 6, 2019, the lease converted to month-to-month, again in accordance with the provisions of the lease. Enrigue continued to live in the apartment and paid the rent for approximately one year, making a final payment on May 2, 2020. As of July 6, 2020, the amount of unpaid rent and fees owed to ERM on the apartment under the 2019 lease was $6,833.72.

On July 7, 2020, Enrigue executed a new lease (the "2020 lease") by virtual signature. Although Enrigue was not authorized to sign a lease on Castro's behalf, she forged Castro's virtual signature using a new e-mail address she controlled. ERM concedes Castro's signature on the 2020 lease was forged by Enrigue. It is likewise undisputed that the e-mail account associated with the forged signature had been created by an employee at Enrigue's company at her direction and was controlled by her to effectuate the forgery. Enrigue never paid any rent on the 2020 lease, and the amount owed on the apartment continued to increase while she lived there. Unaware of the forgery at the time, ERM pursued payment from both Enrigue and Castro by repeatedly posting a notice to pay or vacate at the front door of the apartment.

In 2023, Castro attempted to rent a different ERM-owned apartment in Boston and learned there was a pending balance on his account. He contacted ERM "to confirm that the attached contract [the 2019 lease] has no balance with [ERM]." ERM responded:

> We received your inquiry about your current balance at The Pearl Apartments here in Seattle. You were never removed from the lease and we have been trying to reach you since 2020. Both the email and phone number you had on file were unsuccessful. You are still liable for the lease and no rent has been received since June of 2020. The apartment is currently in the eviction process and going through court proceedings as well over $100k is due as of today.

Castro and ERM were unable to resolve this disagreement; while Castro claimed "I had no idea about this," ERM stated "we are equally surprised that you didn't know about what's been going on at the Property."

Following this exchange, Castro filed a police report for identity theft and forgery. ERM, in turn, filed a complaint against both Enrigue and Castro for breach

of contract based on the 2020 lease and ejectment. The trial court subsequently granted ERM's motion for leave to amend its complaint to include a breach of contract claim based on the 2019 lease. Thereafter, Castro filed a motion for summary judgment arguing he was not liable as a matter of law under both leases. ERM opposed Castro's motion and filed a cross-motion for summary judgment arguing Castro was liable under both leases.

Following a hearing, the trial court granted Castro's motion. Regarding the 2020 lease, the court determined "no reasonable trier-of-fact could find that Castro signed the 2020 lease agreement" and Castro "cannot be bound by the 2020 lease because he did not sign it." Regarding the 2019 lease, the court ruled "the lease does not specify that a co-tenant, who moves out, will continue to be responsible for rent on a month-to-month basis following the expiration of the lease if another tenant remains in the apartment." ERM filed a motion for reconsideration, which the trial court denied. Castro filed a motion for attorney fees and costs, which the trial court also denied.

Meanwhile, the trial court entered an order of default judgment against Enrigue. ERM then filed a motion for reconsideration regarding the amount Enrigue owed, arguing it should have been calculated at a higher monthly rental rate than was used in the order of default. The court granted the motion for reconsideration and corrected the amount Enrigue owed to ERM. In that same order, the court *sua sponte* reconsidered its prior ruling denying Castro's motion for attorney fees, concluding, "Castro is the prevailing party" and "is entitled to an award of attorney fees and costs." ERM then filed a motion for reconsideration regarding that ruling, which the court denied.

- 4 -

Finally, the trial court entered an amended order of default judgment against Enrigue pursuant to its order modifying the amount she owed to ERM and it included in that final order findings of fact and conclusions of law regarding both tenants' liability.  ERM appeals.

II

A.      Summary Judgment

ERM argues the trial court erred when it granted Castro's motion for summary judgment.  We agree the trial court erred in granting Castro's motion with regard to the 2019 lease, but otherwise affirm the trial court's summary judgment ruling.

We review an order granting summary judgment de novo.  *Aucoin v. C4Digs, Inc.*, 32 Wn. App. 2d 103, 108, 555 P.3d 884 (2024).  Our inquiry is "whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law" considering "the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party," here ERM.  *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

We first address the relatively straightforward issue of whether Castro is liable to ERM for unpaid rent under the 2020 lease.  The controlling legal principle is well-settled:  "[a] forged signature . . . cannot create a valid, enforceable obligation against the purported maker."  *Fid. & Deposit Co. of Maryland v. Ticor Title Ins. Co.*, 88 Wn. App. 64, 69, 943 P.2d 710 (1997).  Consistent with this well-settled law, the trial court concluded "Castro cannot be bound by the 2020 lease because he did not sign it."  The trial court did not err in so holding, and we

therefore affirm the court's summary judgment ruling regarding Castro's liability to ERM under the 2020 lease.

Turning to the 2019 lease, we begin by analyzing whether Castro is liable to ERM for unpaid rent that accrued *after* the 2020 lease was executed on July 7, 2020. Washington courts have repeatedly held the existence of a later agreement supersedes prior agreements on the same subject matter. *See Peterson v. Betts*, 24 Wn.2d 376, 398, 165 P.2d 95 (1946) ("[t]he acceptance of the new lease necessarily implies a surrender of the former one"); *Mainline Rock & Ballast, Inc. v. Barnes, Inc.*, 8 Wn. App. 2d 594, 613, 439 P.3d 662 (2019) ("a later agreement can supersede any earlier agreement or understanding simply by being a later agreement"). Applying this legal principle here, execution of the 2020 lease by ERM and Enrigue superseded the 2019 lease between ERM, Enrigue, and Castro regarding the apartment in which Enrigue continued to reside.

The same is true under the plain language of the 2020 lease. Relevant to this issue, the lease states: "This Lease . . . contains our entire agreement. We both acknowledge that there are no oral understandings between us, and neither of us have relied on any representations, express or implied, that are not contained in this Lease." Although Castro is not a party to this agreement (because he never signed it), ERM is a party, and it expressly agreed that the 2020 lease contains "our entire agreement" governing its entitlement to rent (as well as all other rights and obligations) as to the subject apartment.

Contrary to ERM's argument, it does not matter in deciding this issue (whether the 2020 lease superseded the 2019 lease) that Castro did not sign the 2020 lease and the lease is therefore void as to him. That is because both ERM

and Enrigue signed the 2020 lease and it is a complete agreement as to them. Neither party offers legal authority regarding whether a lease agreement is void as to two tenants if one tenant forges the other's signature, but analogous Washington cases stand for the proposition that a multi-party contract is enforceable as to valid signatories even when one signature is a forgery.  Addressing that issue, our Supreme Court has held:

> Assuming that the conditional sale contract, sold or assigned to the bank, was a forgery [where defendant forged brother-in-law's signature], it does not follow that the *assignment* was forged, or that it was invalid or a legal nullity.  In fact it was not.

*State v. Phillips*, 42 Wn.2d 137, 142, 253 P.2d 919 (1953).  Washington appellate courts have similarly so held, albeit in unpublished opinions.[2]  It follows that the 2020 lease is valid and enforceable as to ERM and Enrigue and thus supersedes the 2019 lease regarding the apartment in which Enrigue continued to reside after the 2020 lease was executed.

Having so determined, we turn to whether Castro is liable to ERM under the 2019 lease for unpaid rent that accrued *before* the 2020 lease was executed on July 7, 2020.  Where "language is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists."  *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515, 5

---

[2] *See Summit Leasing, Inc. v. Chhatrala Edes, LLC*, No. 33870-3-III (Wash. Ct. App. Oct. 13, 2016) (unpublished) https:www.courts.wa.gov/opinions/pdf/338703_unp.pdf ("If Ashish's signature was forged, he is not liable" but other parties to the equipment financing agreement may be); *Warn/Williams & Assocs. v. Quick Check, Inc.*, noted at 114 Wn. App. 1049 (2002) ("the uncontroverted evidence was that Joseph Crupi . . . unilaterally decided to forge Debra Conway–Crupi's signature on the guaranty; that she did not find out until after the lawsuit was commenced; and that she was candid about the situation thereafter" thus the court affirmed the judgment as to Joseph Crupi and other parties but could not affirm the judgment against Debra Conway–Crupi). Although *Summit Leasing* and *Warn/Williams* are unpublished opinions, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision."  GR 14.1(c).

P.3d 722 (2000). Moreover, one is bound by a contract voluntarily and knowingly signed. *H. D. Fowler Co. v. Warren*, 17 Wn. App. 178, 180, 562 P.2d 646 (1977) ("a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents").

The 2019 lease provides:

> Lease Term Expiration: *You must provide us with a written notice of your intent to vacate at least 20 days prior to your move-out date.* If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date.

(Emphasis added.) It continues:

> You specifically acknowledge that this Lease contains provisions extending the Lease Term if you stay beyond the Expiration Date set forth on the first page of this Term Sheet or if you fail to provide timely written notice of your intent to vacate the Premises at least 20 days prior to the Expiration Date.

(Emphasis omitted.) It then provides, "[t]he term of this Lease is set forth in the Lease Term section of the Term Sheet. At the end of your Lease term, if you do not move out or, if you do not sign a renewal lease, *your Lease will automatically renew on a month-to-month basis*." (Emphasis added.) The next provision reiterates:

> If you plan to move out of the Premises at any time during your Lease term, including the expiration date of your Lease, *you must provide us with a written notice of your intent to vacate* at least 20 days prior to your move-out date . . . . If you fail to give the required notice and move out anyway, you will be charged insufficient notice rent for the number of days your notice is short. The insufficient notice rent shall be charged at the per diem rental rate that is in effect on your move-out date. *If you move out without providing any notice at all, then, for the purposes of this paragraph, your move-out date will be considered to be your notice date.*

(Emphasis added.) Finally, the provision entitled "Move-Out Obligations" provides in relevant part, "You agree to return all keys, access cards and remotes to us *to confirm you have vacated* the Premises. *If you fail to return these items, you agree that your move-out date will be the date we physically take possession of the premises.*" (Emphasis added.)

When the trial court granted Castro's motion for summary judgment as to the 2019 lease, it reasoned:

> Nothing in [the notice to vacate] provision contemplates a tenant owing rent beyond the expiration of the lease after the tenant moves out of the apartment. Stated another way, nothing in this provision envisions a tenant being responsible for rent on a month-to-month basis in perpetuity for moving out without 20-days' notice.
>
> . . . .
>
> [T]he lease does not specify that a co-tenant, who moves out, will continue to be responsible for rent on a month-to-month basis following the expiration of the lease if another tenant remains in the apartment.

The court thus concluded that Castro, simply by virtue of having purportedly moved out of the apartment, is not jointly and severally liable under the lease because Enrigue continued living there.

The trial court erred in so ruling, as there is no evidence Castro "moved out." Addressing this issue, Castro argues he did not keep a set of keys to the apartment and instead used a set furnished by Enrigue when he periodically visited her. But it is undisputed that he did not confirm he had vacated the premises by returning access keys to ERM, as required by the lease. Nor did he provide any written notice of his intention to vacate such that ERM could know he wished to end his obligations when the term ended instead of going to a month-to-month

arrangement as he had for prior periods over their longstanding landlord-tenant relationship. In fact, he failed to respond to inquiries from ERM regarding whether he planned to continue the tenancy or vacate the apartment. Thus, Castro did not fulfill his obligations under the 2019 lease to effectively terminate the parties' agreement as to him.

As stated above, the undisputed evidence before the trial court showed Enrigue paid the month-to-month rent for approximately a year after the lease term ended and the balance owed on the apartment was zero as of May 2, 2020. Unpaid rent and other charges then accrued for several weeks after the last payment and before the 2020 lease was executed on July 7, 2020. Castro is thus liable to ERM for $6,833.72, which is the undisputed amount owed to ERM under the 2019 lease as of July 6, 2020 (the day before the 2020 lease was executed).[3] We therefore reverse in part the trial court's summary judgment ruling and remand the matter for further proceedings to address this error.

Finally, we reject ERM's argument that Castro should be estopped from arguing against liability under either lease based on judicial estoppel principles[4] because ERM's meager citations to its own characterization of the facts to support this argument are both inadequate and misleading. *See* RAP 10.3(a)(6) (requiring

---

[3] Because we find the 2019 lease to be enforceable as to Castro, we do not reach ERM's argument that "in the absence of an enforceable agreement . . . equitable doctrines . . . prevent Castro from escaping liability as a Co-Tenant." Furthermore, ERM did not seek relief under equitable doctrines in its complaint, and arguments not raised in the trial court need not be considered on appeal. *See* RAP 2.5(a) (an "appellate court may refuse to review any claim of error which was not raised in the trial court"); *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 853, 50 P.3d 256 (2002) ("arguments not raised in the trial court generally will not be considered on appeal") (internal quotations omitted).

[4] "Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Chonah v. Coastal Villages Pollock, LLC*, 5 Wn. App. 2d 139, 147, 425 P.3d 895 (2018) (internal quotation marks omitted).

an appellant's brief to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); *see also M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 79, 566 P.3d 132 (2025) (citing RAP 10.3(a)(6)). A careful review of the record confirms Castro never conceded liability under either lease or admitted "knowing that he had not been released from [the 2019] lease" as ERM claims. Accordingly, contrary to ERM's argument, judicial estoppel does not apply here.

B.    Attorney Fees

In addition to granting Castro's motion for summary judgment, the trial court awarded attorney fees in favor of Castro under the "default remedies" provision in the lease, which provides that if ERM sues to recover possession of the premises or unpaid rent, it "can also recover the costs, including attorneys' fees and court costs, which we incur to pursue such actions against you." Although this provision permits only ERM to recover its fees, "RCW 4.84.330 converts the term to a bilateral fee provision." *Gebreseralse v. Columbia Debt Recovery*, 24 Wn. App. 2d 650, 662, 521 P.3d 221 (2022). The trial court reasoned that Castro was entitled to recover such fees because he "successfully defended against the action and had all claims against him dismissed." Because we reverse in part the trial court's summary judgment ruling, the trial court's reasoning is no longer accurate. Accordingly, we vacate its fee award and remand this issue for further proceedings consistent with this opinion.

Finally, Castro also seeks attorney fees on appeal. A party may request fees on appeal where applicable law grants them the right. RAP 18.1(a). "If attorney fees are allowable at trial, the prevailing party may recover fees on

- 11 -

appeal." *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017) (citing RAP 18.1). Because we vacate the trial court's award of attorney fees in favor of Castro and remand that issue to the trial court, Castro's request for attorney fees on appeal is premature. The trial court may consider this issue on remand and award attorney fees incurred in this appeal if and when appropriate to do so. We otherwise express no opinion regarding the parties' entitlement to attorney fees in litigating this matter.

III

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____, J.
Feldman

WE CONCUR:

_____, J.    _____, J.